[No. 11794.  In Bank. — February 4, 1887.]

OAKLAND PAVING COMPANY, RESPONDENT, *v.* J. W. TOMPKINS, CITY MARSHAL OF OAKLAND, APPELLANT.

CONSTITUTIONAL LAW — AMENDMENT — ENTRY IN LEGISLATIVE JOURNALS. — Section 1 of article 18 of the constitution, providing that proposed amendments to the constitution shall be entered in the journals of the senate and assembly, does not require a proposed amendment to be copied at large in the journals; a reference to it by title and number is sufficient.

APPEAL from a judgment of the Superior Court of Alameda County.

The proceeding was for a writ of mandate to compel the city marshal of the city of Oakland to enter into and execute a certain contract for street work in the city of Oakland. It was stipulated between the parties that all the requirements prescribed by the special street laws of Oakland before 1880, and by the general street act of March 18, 1885, had been complied with. Neither of these acts made any provision for levying, collecting, and paying into the city treasury an assessment previous to the making of a contract for letting or doing street work, as required by section 19 of article 11 of the constitution of 1879, and no such assessment had been levied, collected, or paid in connection with the work in question. The petitioner contended that this requirement had been abrogated by an amendment to the constitution proposed by the legislature in 1883, and adopted by the people at the general election in 1884. The further facts are stated in the opinion of the court.

*C. T. Johns,* for Appellant.

*John H. Boalt, Henry Vrooman,* and *C. T. H. Palmer,* for Respondent.

TEMPLE, J.—This case arises from a street assessment in Oakland. The only question submitted is, whether the constitutional amendment No. 1, ratified by the electors at the general election in 1884, being an amendment to section 19, article 11, was proposed by the legislature as required by section 1, article 18, of the constitution. That section provides that amendments may "be proposed in the senate and assembly, and if two thirds of all the members elected to each of the two houses shall vote in favor thereof, such proposed amendment or amendments shall be entered in the journals, with the yeas and nays taken thereon," etc.

The objection is, that the proposed amendment was not entered in the journal of either house, as required by the constitution.

It was not copied into the journal, but there was entered an identifying reference, such as is always entered in regard to legislative bills; that is, it was proposed as a senate bill and was referred to by title and number. The yeas and nays were entered as directed. It is agreed that the amendment thus proposed was submitted to the people, and received a very large majority of the votes cast.

This question is not a new one in this court. In *People* v. *Strother*, 67 Cal. 624, it was the only issue of any importance, and it was squarely decided that the amendment had been constitutionally adopted. This was in Bank, and there was no apparent dissent. This decision was in October, 1885, and in the following May, in the case of the *Oakland Paving Company* v. *Hilton*, 69 Cal. 479, an opinion was rendered by Justice Thornton, which was concurred in by Mr. Justice McKee, holding to the contrary. The other members of the court who participated in that decision based their concurrence on other grounds.

It is contended that in this condition of the decisions, the question ought to be considered an open one. We

do not accede to this proposition. In the case of *People*
v. *Strother, supra,* the point was squarely presented, was
the only one involved, and was plainly and unequivocally
decided. We see no reason why it is not entitled to the
usual authority of a precedent; nor do we concede that
in so deciding there was error. All admit that the con-
stitutional requirement must be strictly performed. But
it does not follow from this that the language of the in-
strument must be understood literally. The same rules
of construction must be applied, to ascertain what its
requirements are, as though it were not mandatory and
prohibitory. And we think, when an act commanded
or authorized may be done in different ways, either of
which would be a strict compliance with the terms of
the instrument understood in some common and popular
sense, either mode may be pursued, unless some reason
is discoverable for holding that one of such modes only
will answer. If, for instance, the direction to enter the
amendment in the journal is complied with, in some
usual and popular sense of the language, either by copy-
ing the amendment into the journal or by placing upon
the journal an identifying reference only, either will do
unless the context shows a different intention.

Now, the word "enter" primarily means to go in, or
to come in, but has many derivative meanings, and is
often employed in elliptical expressions, and is quite apt
to be so used that the literal or most obvious meaning
cannot be attributed to it. We read, for instance, in the
laws of Congress that citizens may enter at the land-
office a tract of land, and the expression is repeated in
different forms many times. We are often told that a
certain horse has been entered for a race, or an animal
has been entered at a fair. What is really done in each
instance is to make a record of certain important facts
for preservation or notice. And such is certainly a very
ordinary meaning of the word "enter" when used in this
derivative sense; that is, to register the essential facts

concerning the thing said to be entered. And we think it may be fully admitted that the most natural and obvious meaning of the word when employed in this derivative sense is to copy, without greatly affecting the argument.

We find near the title-page of nearly every book printed that it has been *entered* in the office of the librarian of Congress. What is really left with the librarian is the title-page of the proposed book, and this constitutes the entry, although after it is printed the author is now required to present a copy of the book for the Congressional Library. We sometimes read that a certain play of Shakespeare was entered at Stationers' Hall. We find that the entry really made was a brief identifying reference, preliminary to obtaining license to print. Such instances of the use of the word, and of the phrase in which it occurs, might be multiplied indefinitely, but these are enough to show that this usage is quite common. Now, if we substitute in all these and like cases the word "copy" or the phrase "enter at large" for the word "enter," we are conscious at once that a great change has been made. Indeed, the mere fact that the qualifying words "at large," "at length," "in full," do so often accompany the word "enter" is proof that all feel that it is not a synonym of the word "copy."

The language, however, had been construed under the old constitution, which contained the same words, and under which amendments had been adopted in the mode pursued in this case.

The practice of both houses of the legislature had given this construction to similar language. The joint rules have always required, as also do the rules of the House of Representatives of Congress, that at a certain stage in the passage of a bill it shall be entered on the records of the House. They have always been so entered by identifying reference. The convention itself adopted Cush-

ing's Manual, which employs similar language which is so used that it must be similarly understood.

Many statutes in force at the time the convention was in session employ the language in the same sense. (Pol. Code, secs. 254, 656, 4031; Civ. Code, sec. 324.)

The convention adopted the language under consideration with knowledge of the practical construction which had been given to the same words under the old constitution, and in view of the established usage of the legislature as to entries in the journals. It knew that the practice had always been to consider similar matters entered on the journals when there was made a simple identifying reference. It knew also of the common usage to which we have referred; and it .is fair to presume that it intended the same meaning. Otherwise, it would have used some language which would indicate that a different entry was required from that which was habitually made in the journals. In addition to this we have the authority of both houses, which have declared the proposal duly made, and the amendment duly adopted, of the executive who submitted it to the people, and whatever force there be in the fact that the people acted upon and ratified it.

This is sufficient to uphold the amendment, unless we can see from the context that something else was meant. We perceive no such intent. The evident purpose of the entire provision doubtless was to preserve a record of the vote. As a majority controls the journals, it may have been apprehended that it might be made to appear that the proposal was duly passed although lacking the requisite majority, and so it was required that the yeas and nays be entered. But however this may be, the principal thing is the record of the yeas and nays, and this purpose is accomplished as perfectly by the entry made as it would be by any other.

As to preserving the identity of the amendment proposed, there is no greater difficulty in this matter than

with reference to bills.    That is left to be provided for by the legislature.

The parties agree that in case the amendment was properly adopted the judgment should be affirmed.   It is stipulated that in the proceedings there was full compliance both with the street laws prior to 1880 and with the law of 1885.   It is therefore not necessary to decide which law is in force.   That question is really stipulated out of the case.

Judgment affirmed.

PATERSON, J., McFARLAND, J., McKINSTRY, J., SHARP-STEIN, J., and MORRISON, C. J., concurred.

THORNTON, J., dissented.