[No. 2379]

## IN THE MATTER OF APPLICATION OF FRANK MING FOR A WRIT OF HABEAS CORPUS.

[181 Pac. 319]

1. CONSTITUTIONAL LAW—AMENDMENT OF CONSTITUTION—ENTRY IN HOUSE AND SENATE JOURNALS.

Under Const. art. 16, sec. 1, requiring that proposed constitutional amendments shall be "entered" on the respective journals of the senate and assembly, a proposed constitutional amendment need not be entered on the journal in full, it being sufficient if it be entered by an identifying reference.

2. CONSTITUTIONAL LAW—STATUTES—CONSTRUCTION—MEANING OF WORDS.

When a word is used in a statute or constitution, it is supposed that it is used in its ordinary sense, unless the contrary is indicated.

3. HABEAS CORPUS—MATTERS REVIEWABLE—MOOT QUESTIONS.

Where petitioner was arrested for violating the initiative prohibition act, and the district attorney elected to have the justice hold a preliminary hearing to bind over, on an original application for writ of habeas corpus to the supreme court, such court will not pass upon the objection that the proceedings were void as conferring upon the district court jurisdiction of a misdemeanor until a court without jurisdiction proceeds to exercise it, since until such time the question is moot.

ORIGINAL APPLICATION by Frank Ming for a writ of habeas corpus. **Writ discharged**, petitioner remanded, and **proceedings dismissed**.

*McCarran, Miller & Mashburn,* for Petitioner:

Proposed amendments to the constitution must be entered on the journals of the respective houses of the legislature. Const. Nev., sec. 1, art. 16; State ex rel. Stevenson v. Tufly, 19 Nev. 391; Koehler v. Hill, 60 Iowa, 543; Cooley, Const. Lim. 183; Collier v. Frierson, 24 Ala. 108; State v. Davis, 20 Nev. 227. "No argument has been made that the amendments could be valid if not published as required by the constitution and doubtless under the decisions, particularly of this court (State v. Tufly, 19 Nev. 391; State v. Davis, 20 Nev. 221) they would not be." State v. Grey, 21 Nev. 227.

"If there are conclusions of the court, authoritatively announced in that case, we ought to adhere to them, unless they are manifestly unsound; for in no class of cases coming before us ought we to so carefully guard against vacillation and uncertainty as in cases which involve a construction of the fundamental law of the state, especially if the rule of construction announced has stood for many years unquestioned in this court, and may be presumed to have been the rule in accordance with which intervening legislative action, including the submission of the amendment under consideration, has been taken." State ex rel. Bailey v. Brookhart, 84 N. W. 1064. "The constitution can be amended in but two ways, either by a constitutional convention properly convened, or according to the manner provided in the instrument itself." Kadderly v. City of Portland, 74 Pac. 710. "A legislature * * * must comply strictly with all the requirements thereof." Idem. "Where the mode by which an amendment to be made to the constitution is clearly pointed out by the constitution itself, such mode is a substantial and essential part of the instrument. It is to be regarded by the legislature as exclusive and as not permitting any other mode or form to be observed." State v. Tooker, 15 Mont. 8, 37 Pac. 84. "Our duty in expounding the supreme law compels us to decide that the proposed amendment never was proposed as required, and, therefore, never ought to have been

submitted. It was a nullity before it reached the people, and was not animated by them, because their own solemn commands empowering its proposal, and specifying the mode thereof, had been entirely ignored by the proponent." Durfee v. Harper, 56 Pac. 582; In Re Convention, 14 R. I. 649; State v. McBride, 4 Mo. 303; State v. Mason, 43 La. Ann. 590; Collier v. Frierson, 24 Ala. 100; Answer of the Judges, 6 Cush. 573; Paving Co. v. Hilton, 69 Cal. 479; Koehler v. Hill, 60 Iowa, 543; Russie v. Brazzell, 128 Mo. 93; Miller v. Johnson, 92 Ky. 589; Cooley, Const. Lim. 44; Jameson, Const. Conv. 564. "The fundamental law of the state prescribes the limitations under which the electors of the state may change the same, and, unless such course is pursued, the mere fact that a majority of the electors are in favor of a change, and have so expressed themselves, does not work a change. Such a course would be revolutionary and the constitution of the state would become a mere matter of form." McBee v. Brady, 100 Pac. 97; State v. Powell, 77 Miss. 543; North Carolina v. McIver, 72 N. C. 76.

The provisions of the organic law as to amendments are mandatory. State v. Winnett, 15 Am. & Eng. Ann. Cas. 786; State ex rel. Oven v. Donald, 151 N. W. 333; State v. Marcus, 152 N. W. 419.

The district attorney has no jurisdiction to hear and determine the offense, and hence the justice court has no jurisdiction to hold a preliminary examination with a view to certifying the case to the district court. The prohibition law in this respect is unconstitutional, in that it confers judicial powers upon the district attorney, and empowers him to fix the jurisdiction of the several courts. Moore v. Orr, 30 Nev. 458; Green v. Superior Court, 78 Cal. 556; State v. Meyers, 11 Mont. 556.

*J. M. McNamara*, Amicus Curiæ:

Is it sufficient, in order to comply with section 1, article 16 of the constitution of Nevada, to enter upon the journals of the legislature a resolution proposing a constitutional amendment by title, article, and section,

or is it necessary that such resolution be entered in extenso upon the journals of either house? A reference by title, article, and section is not sufficient. The resolution, in order to comply with the mandates of the constitution, must be entered in full. "We conclude that amendments to the constitution can be made only in the mode provided by the instrument itself. A proposed amendment, if agreed to by a majority of each house of the legislature, must be entered upon the journals, so that no doubt may arise as to its provisions. * * * These provisions * * * are exclusive and controlling." State v. Tufly, 19 Nev. 391; State v. Davis, 20 Pac. 894.

The resolution under consideration was dead. Any subsequent action by either the legislature or the people voting upon the amendment served no purpose; it never could breathe life into that which was already dead, and which, in fact, never had any legal existence. Koehler v. Hill, 60 Iowa, 543; State v. Marcus, 152 N. W. 419; 6 R. C. L. 29; People v. Sours, 31 Colo. 369; Oakland Paving Co. v. Tompkins, 12 Pac. 801.

The provisions of the constitution providing ways and means for its amendment are mandatory. Koehler v. Hill, supra; Cooley, Const. Lim. 78.

The word "entered" refers directly to "amendment or amendments." "To inscribe, to enroll, to enter with particulars of the account." Webster's New Int. Dict.; Century Dict. "To cause to be put down upon the record." Bouvier. "The language is so clear that any attempt to construe it only serves to cloud and mystify its provisions."

The court should not take into consideration in a case of this nature those things that are not in the record, any more than in a case of any other kind. Whatever may be the fate of other constitutional amendments is no concern of the court here. "If the legislature may disregard the letter of the fundamental law, in its most material particulars, and the court may ingeniously bend its provisions to say that it means one thing when, in its letter, it means another, * * * there is great

danger of its failing to fully accomplish its purpose of the people in the beginning." State v. Marcus, supra.

The provisions of a constitution granting to the legislature the authority to adopt resolutions proposing amendments to a state constitution are grants of authority, and the legislature, without an express provision in the constitution, has no such authority inherent as is possessed in the enactment of statutes. "We have sought to maintain the supremacy of the constitution at whatever hazard. It is for the protection of minorities that constitutions are framed. Sometimes constitutions must be interposed for the protection of minorities even against themselves. Constitutions are adopted in times of public repose, when sober reason holds her citadel, and are designed to check the surging passions in times of popular excitement; but if courts could be coerced by popular majorities into a disregard of their provisions, constitutions would become mere 'ropes of sand,' and there would be an end of social security and of constitutional freedom. *   *   * The constitution is the palladium of republican freedom. Young men coming forward upon the stage of political action must be educated to venerate it. Those already upon the stage must be taught to obey it. Whatever interest may be advanced or may suffer, whoever or whatever may be 'voted up or voted down,' no sacrilegious hand must be laid upon the constitution." Koehler v. Hill, supra.

*L. B. Fowler*, Attorney-General, and *Robert Richards*, Deputy Attorney-General, for Respondent:

The constitutional amendment that is attacked in this proceeding was duly entered upon the journals of both houses of the legislature in such a manner as to be unmistakably identified. Such entering was in full compliance with the constitution's requirement, which provides that amendments to the constitution must be entered in the journals of the respective houses of the legislature. The journals are used merely to determine whether or not a majority vote of each house has been recorded in favor of such amendments. The strict rule

has been adopted that an act passed by the legislature, and which becomes a law, cannot be attacked by the use of the journals of the legislature to prove that the necessary vote was not given in its favor in one or both houses. The enrolled bill is final. Behind this no person is allowed to go. State v. Swift, 10 Nev. 176. It is not necessary that amendments be spread in full upon the journals. Constitutional Prohibitory Amendment, 24 Kan. 700; People v. Strother, 67 Cal. 624; Oakland Paving Co. v. Hilton, 69 Cal. 479, 72 Cal. 5; State v. Herreid, 10 S. D. 109. "* * * Then it becomes a valid part of the organic law, notwithstanding the fact that the legislature may have failed to have such proposed amendment entered at length upon the journals of the two respective houses." West v. State, 50 Fla. 154; Cudihee v. Phelps, 76 Wash. 314; Worman v. Hagan, 78 Md. 152; Gottstein v. Lister, 88 Wash. 462. In the event of a conflict between the journals and the enrolled resolution, the latter, properly authenticated, is to prevail. Smith v. Lucers, 168 Pac. 709.

*L. D. Summerfield,* District Attorney of Washoe County, for Respondent:

The application presents but two questions for determination, namely, the validity of the initiative act, and the sufficiency of the complaint. No other question can be here considered. If the act is valid and the complaint sufficient, the petitioner must be remanded. This court has already decided that the justice court has jurisdiction of the offense charged. Even if it were held that the election of the district attorney was void, petitioner would not be entitled to be released. The justice court should then proceed to trial. In Re Zwissig, 42 Nev. 360. The proper proceeding to raise questions relating to the election by the district attorney would be prohibition, on the ground that the justice is about to exceed his jurisdiction in holding a preliminary examination. 21 Cyc. 287.

The prevailing view at this time in regard to constitutional provisions similar to section 1, article 16, of the

constitution of Nevada, is that it is not essential that a constitutional amendment be entered in full on the journals of the legislature, but that compliance is had with the constitutional provision when there is an identifying reference to the amendment on such journals. Prohibitory Amendment Cases, 24 Kan. 700; Oakland Paving Co. v. Tompkins, 72 Cal. 5; Thomason v. Ashworth, 67 Cal. 624; West v. State, 50 Fla. 154, 624; Worman v. Hagan, 78 Md. 152; In Re Senate File, 25 Neb. 864; State v. Herreid, 10 S. D. 109; Gottstein v. Lister, 88 Wash. 462; Cudihee v. Phelps, 76 Wash. 314; State v. Marcus, 160 Wis. 354.

*S. W. Belford,* Amicus Curiæ:

Since the adoption of the initiative and referendum amendment to the constitution of the state no question of its validity has ever been raised, until the institution of these proceedings. Under it several laws have been enacted of vital importance to the people. It is questionable whether any other matter has ever been presented to this court which so affects our whole structure of government, and it is the right of the court and its solemn duty to consider the serious consequences that would follow a decision in favor of the petitioner. "Frequent exercises of power, uniform and long acquiescence of the people in it, constitute a fundamental law, as binding as though it had been formulated expressly in the constitution." State v. Grey, 21 Nev. 227; Worthington v. District Court, 37 Nev. 212. The rule must be regarded as established in this state that the court will consider other matters in cases of this kind, among which are: (1) recognition of the legality of the statute or amendment by the various departments of the state government; (2) acquiescence therein by the people; (3) exercise of power under it; (4) legislative construction; (5) public effects of its decisions. Where an amendment has been acted upon and recognized by all departments of the state government and by the people, where rights have been acquired and exercised upon

assumption of its validity, this court should refuse to disturb the enactment, particularly when by so doing other matters of vital importance would be threatened and disturbed.     Secombe v. Kittleson, 12 N. W. 519; Continental Improvement Co. v. Phelps, 11 N. W. 168; Field v. Clark, 12 Sup. Ct. 497.

It was primarily the duty of the legislature to interpret the requirements of section 1, article 16, of the constitution.   The legislature, in the first instance, must interpret its own powers and duties; and if such legislative interpretation does not clearly, and beyond all doubt, violate the constitution, the courts will sustain the legislative construction.   State v. Grey, supra; Mining Co. v. Seawell, 11 Nev. 399; Endlich, Interp. Stats., sec. 527; Cooley, Const. Lim. 82; People v. La Salle Co., 100 Ill. 495; Stuart v. Laird, 1 Cranch, 299; Rogers v. Goodwin, 2 Mass. 475; Bingham v. Miller, 17 Ohio, 445; 8 Cyc. 738.   "Here we have a legislative construction of the constitution which should not and cannot be ignored."   Koehler v. Hill, 14 N. W. 745.   In construing the requirement of the constitution that an amendment "be entered" on the journals, it was the judgment of the legislature that an identifying reference was a compliance with the provision.   The case of State v. Tufly, 19 Nev. 391, is not controlling in the question at bar.   In that proceeding it was disclosed that "no entry was made upon the journals of either house."   Where there is no entry of the proposed amendment, the omission is fatal; where there is an entry by identifying reference or otherwise, the amendment is valid, and there has been a compliance with the constitution.

The court should refuse to go behind the enrolled and published resolution; and unless the resolution carries its death wound on its face, it should not be disturbed. State v. Swift, 10 Nev. 176.   The enrolled bill is conclusively presumed to be the best evidence.   State v. Beck, 25 Nev. 68; State v. Nye, 23 Nev. 99; State v. Glenn, 18 Nev. 34; Sherman v. Storey, 30 Cal. 253; Yolo County v. Colgan, 64 Pac. 403.

By the Court, COLEMAN, C. J.:

This is an original proceeding in habeas corpus.

A complaint was filed in the justice court of Reno township charging petitioner with having violated the initiative prohibition statute which was adopted by a vote of the people at the general election in November, 1918 (Stats. 1919, p. 1). After the arrest of the petitioner, the district attorney of Washoe County, pursuant to section 28 of the statute, filed with the justice of the peace an election to have that officer hold a preliminary hearing in said case.

Two grounds are strenuously urged for the issuance of the writ in this proceeding. The first is that the amendment to our constitution providing for the enactment of laws upon the initiative of the people was not properly adopted; the second that the statute, wherein it authorizes the district attorney to elect to have a justice of the peace hold a preliminary hearing, attempts to confer upon both the justice of the peace and the district court jurisdiction of a misdemeanor, and is therefore in violation of the constitutional rights of petitioner.

The main question in this case is as to whether or not the amendment to our constitution providing for the enactment of laws by submitting proposed statutes to the people by an initiative petition was adopted as provided by our constitution. Section 1, article 16, which provides the method of amending our constitution, reads as follows:

"Any amendment or amendments to this Constitution may be proposed in the Senate or Assembly; and if the same shall be agreed to by a Majority of all the members elected to each of the two houses, such proposed amendment or amendments shall be entered on their respective journals, with the Yeas and Nays taken thereon, and referred to the Legislature then next to be chosen, and shall be published for three months next preceding the time of making such choice. And if in the Legislature next chosen as aforesaid, such proposed amendment or amendments shall be agreed to by a majority of all the

members elected to each house, then it shall be the duty of the Legislature to submit such proposed amendment or amendments to the people, in such manner and at such time as the Legislature shall prescribe, and if the people shall approve and ratify such amendment or amendments by a majority of the electors qualified to vote for members of the Legislature voting thereon, such amendment or amendments shall become a part of the Constitution."

It is conceded by petitioner that all requirements of this section relating to amendments were complied with, except as to entering the amendment upon the journal. The Journal of the Assembly of 1908–1909, at page 79, shows:

*"Motions and Resolutions.* By Mr. Brooks: Assembly Joint and Concurrent Resolution No. 7, proposing to amend section 1 of article IV of the Constitution of Nevada, pertaining to the initiative and referendum, and other legislative authority, and power connected therewith. On motion of Mr. Brooks, duly seconded, rules suspended, reading so far had considered first reading, rules further suspended, resolution read second time by title, and referred to Committee on Judiciary."

The resolution was thereafter adopted, the journal (page 143) showing that it was designated thereupon as "Assembly Joint and Concurrent Resolution No. 7." After the adoption in the assembly it went to the senate. The journal of that body shows:

*"Introduction and First Reading.* * * * Assembly Joint and Concurrent Resolution No. 7, proposing to amend section one of article four of the Constitution of Nevada, pertaining to the initiative and referendum, and other legislative authority and power connected therewith. Senator Tallman moved that the rules be suspended, reading so far had considered first reading, rules further suspended, bill be read second time by title, and referred to Committee on Judiciary. Carried. * * *

*"Reports of Committees.* Mr. President: Your Committee on Judiciary have had Assembly Bill No. 107 under consideration and beg leave to report on the same with the recommendation that it be referred to Committee on Education.

"Also, Assembly Joint and Concurrent Resolutions Nos. 7 and 8, and beg leave to report the same by introducing substitutes, and recommend that the substitutes do pass. Clay Tallman, Chairman. * * *

*"Introduction and First Reading.* Senate Substitute for Assembly Joint and Concurrent Resolution No. 7, proposing to amend article nineteen of the Constitution by adding to said article section three, relating to the initiative and referendum and the powers thereby conferred upon the qualified electors.

"Senator Tallman moved that the rules be suspended, reading so far had considered first reading, rules further suspended, resolution be read second time by title, and referred to Committee on Judiciary. Carried."

Thereafter all references to the resolution, as appears from the journal, were to "Senate Substitute for Assembly Joint and Concurrent Resolution, No. 7," and as such it was adopted by both houses of the legislature. The question is: Do the statements contained in the journals constitute such an entry as the constitution contemplates?

At the very threshold of the consideration of this question we are confronted with the case of State v. Tufly, 19 Nev. 391, 12 Pac. 835, 3 Am. St. Rep. 895, which counsel for petitioner contend is decisive of this matter. We are unable to see that the case mentioned decides the point which is now under consideration. The court there says:

"No entry of the proposed amendment was made upon the journal of either house, and the question presented is whether or not this omission was fatal to the adoption of the amendment."

In this connection, we wish to call attention to certain language which we find in the work entitled "The Revision and Amendment of State Constitutions"

(Dodd), commenting on the Tufly case, where it is said, at page 148:

"* * * In Nevada, where an entry upon the journal was required, no entry whatever was made, and the proposed amendment was held invalid because of failure to comply with a specific constitutional requirement."

In a note to the text above quoted we find the following:

"* * * An examination of the journals shows no entry of any sort which can be identified as that of the amendment under consideration."

The enrolled resolution which was attacked shows that it passed February 28, 1883, and after a most exhaustive examination of the journals we fail to find in them any allusion whatever to the passage or adoption of the resolution, nor does counsel for petitioner point out in his brief where any allusion to its adoption or passage appears therein. Thus it is seen that not even an attempt was made "to enter" in the journal the proposed amendment involved in the Tufly case.

In that case it was evidently a conceded fact that no entry had been made upon the journal of the proposed amendment. Not so in this matter. The real question here is: Was an entry made? If we find that no entry was made upon the journal, the Tufly case would be an authority sustaining counsel's contention. It is true that in that case some expressions are found which seem to sustain the contention urged for it; but, as they are not based upon facts involved in the case, they are mere dicta, and the case cannot aid us in the least in determining the question before us. The law laid down in the Tufly case cannot be questioned.

The case of Koehler v. Hill, 60 Iowa, 543, 14 N. W. 738, 15 N. W. 609, is the only authority cited in the Tufly case which can be said to sustain the contention that, when a vote is had upon a proposed amendment in the legislative bodies, it must be entered in full upon the journals, and it is even conceded in that opinion that "to enter" on the journal does not necessarily mean spreading the same at length thereon; while the quotations from Judge Cooley are merely to the effect

that the constitutional requirements are mandatory. Nowhere in the language quoted from him is it held that "to enter" the proposed amendment upon the journal means that the same must be spread at length thereon. Nor is such the holding in the case of Collier v. Frierson, 24 Ala. 108, referred to therein. The question involved in this proceeding was not before the court in that case. For the reasons given, we do not think we should be influenced by the Tufly case.

But learned counsel for petitioner strenuously urges that the provision of the constitution to the effect that a proposed amendment to the constitution, when adopted by either branch of the legislature, must be entered at length upon the journal of the body so adopting such amendment, is sustained by the weight of authority, and in support of this assertion, in addition to the authorities already mentioned by us, calls our attention to the following cases: Oakland Paving Co. v. Hilton, 69 Cal. 479, 11 Pac. 3; Kadderly v. City of Portland, 44 Or. 118, 74 Pac. 710; State v. Tooker, 15 Mont. 8, 37 Pac. 840, 25 L. R. A. 560; Durfee v. Harper, 22 Mont. 354, 56 Pac. 582; McBee v. Brady, 15 Idaho, 761, 100 Pac. 97; Nesbit v. People, 19 Colo. 441, 36 Pac. 221; People v. Sours, 31 Colo. 369, 74 Pac. 167, 102 Am. St. Rep. 34; People v. Loomis, 135 Mich. 556, 98 N. W. 262, 3 Ann. Cas. 751; State v. Marcus, 160 Wis. 354, 152 N. W. 419.

We will consider these cases in the order in which they have been named. The case of Oakland Paving Co. v. Hilton did not determine the question here involved. The opinion by Thornton, J., which lays down the rule invoked, was concurred in by only one justice, the other justices concurring in the order only.

The case of Kadderly v. City of Portland is no authority sustaining the contention which it is cited to support. It is said in the opinion:

"There is no question but that all the forms prescribed by the constitution were strictly and accurately observed. * * *"

The contention is that case was that the legislature of

1899 had no authority to propose the amendment. The question involved in this case was not under consideration.

As to the Colorado and Montana cases, learned counsel for petitioner concede, that there is a "slight difference" between the constitutional provisions of those states and that of Nevada relative to the method of proposing amendments to the constitution. We think the difference is very pronounced. The constitution of Nevada provides that the proposed amendment shall "be entered" upon the journal, while the constitutions of the states mentioned provide that the proposed amendment shall be "entered in full." This is such a marked difference that we feel it would be a waste of time to dwell upon the lack of applicability of the opinions from those states.

As to the case of McBee v. Brady, 15 Idaho, 761, it need only be said that the question as to what constituted an entry upon the journal (which is the point here involved) was not even considered. The court held that the method provided by the constitution for its amendment must be followed, but it did not go into or determine the question of what was necessary to constitute an entry of an amendment upon the journal. Thus it will be seen that the case is not an authority sustaining the contention.

As to the case of People v. Loomis, the court expressly declined to pass upon the question here involved, saying:

"But it is unnecessary to determine the question, as we think that the journal of each house shows the resolution in full as passed by it."

It may be said that when originally considered the court, in State v. Marcus, 160 Wis. 354, adopted the view that is contended for by petitioner. However, upon rehearing the original opinion was reversed and the opposite rule held to be the correct one. Marshall, J., who wrote the original opinion, filed an opinion vigorously dissenting from the prevailing opinion filed on rehearing, in which he said that " an entry by mere number or number and title is not sufficient nor is an

entry in extenso necessary." Thus it will be seen that upon rehearing he conceded that the proposed amendment did not have to be spread in full upon the journal. But Timlin, J., who participated in the consideration of the case upon both hearings, in his opinion upon rehearing says:

"When the first decision in this case was approved unanimously by this court, and filed, the opinion of the court was written by Justice Marshall, with a concurring opinion by Chief Justice Winslow. I think it is nowhere expressly stated in either of these opinions. that the word 'entered,' found in article 12 of the constitution, could be satisfied only by a verbatim record or a record in extenso of the proposed amendment."

This disposes of the authorities relied upon by the petitioner, and we think from an analysis of them that it is fair to say that the views urged by petitioner are sustained by the decisions from the court of last resort of the State of Iowa only; and there was a dissenting opinion in the first of those cases.

We will now consider the authorities that hold that the proposed amendment does not have to be entered in full upon the journal, but that an identifying reference is all that is necessary. The Supreme Court of California, in Oakland Paving Co. v. Tompkins, 72 Cal. 5, 12 Pac. 801, 1 Am. St. Rep. 17, speaking through Temple, J., said:

"The only question submitted is whether the constitutional amendment No. 1, ratified by the electors at the general election in 1884, being an amendment to section 19, article 11, was proposed by the legislature as required by section 1, article 18, of the constitution. That section provides that amendments may 'be proposed in the senate and assembly, and, if two-thirds of all the members elected to each of the two houses shall vote in favor thereof, such proposed amendment or amendments shall be entered in the journals with the yeas and nays taken thereon,' etc. The objection is that the proposed amendment was not entered in the journal of either house, as

required by the constitution. It was not copied into the journal, but there was entered an identifying reference, such as is always entered in regard to legislative bills; that is, it was proposed as a senate bill and was referred to by title and number. The yeas and nays were entered as directed. It is agreed that the amendment thus proposed was submitted to the people and received a very large majority of the votes cast. * * * All admit that the constitutional requirement must be strictly performed. But it does not follow from this that the language of the instrument must be understood literally. The same rules of construction must be applied, to ascertain what its requirements are, as though it were not mandatory and prohibitory. And we think, when an act commanded or authorized may be done in different ways, either of which would be a strict compliance with the terms of the instrument understood in some common and popular sense, either mode may be pursued, unless some reason is discoverable for holding that one of such modes only will answer. If, for instance, the direction to enter the amendment in the journal is complied with, in some usual and popular sense of the language, either by copying the amendment into the journal or by placing upon the journal an identifying reference only, either will do unless the context shows a different intention. Now, the word 'enter' primarily means to go in, or to come in, but has many derivative meanings, and is often employed in elliptical expressions, and is quite apt to be so used that the literal or most obvious meaning cannot be attributed to it. We read, for instance, in the laws of Congress that citizens may enter at the land office a tract of land, and the expression is repeated in different forms many times. We are often told that a certain horse has been entered for a race or an animal has been entered at a fair. What is really done in each instance is to make a record of certain important facts for preservation or notice. And such is certainly a very ordinary meaning of the word 'enter,' when used in this derivative sense; that is, to

register the essential facts concerning the thing said to be entered. And we think it may be fully admitted that the most natural and obvious meaning of the word when employed in this derivative sense is to copy, without greatly affecting the argument. We find near the title-page of nearly every book printed that it has been entered in the office of the librarian of Congress. What is really left with the librarian is the title-page of the proposed book, and this constitutes the entry, although after it is printed the author is now required to present a copy of the book for the congressional library. We sometimes read that a certain play of Shakespeare was entered at Stationers' Hall. We find that the entry really made was a brief identifying reference, preliminary to obtaining license to print. Such instances of the use of the word, and of the phrase in which it occurs, might be multiplied indefinitely, but these are enough to show that this usage is quite common. Now, if we substitute in all these and like cases the word 'copy' or the phrase 'enter at large' for the word 'enter,' we are conscious at once that a great change has been made. Indeed, the mere fact that the qualifying words 'at large,' 'at length,' 'in full,' do so often accompany the word 'enter' is proof that all feel that it is not a synonym of the word 'copy.' * * * This is sufficient to uphold the amendment, unless we can see from the context that something else was meant. We perceive no such intent. The evident purpose of the entire provision doubtless was to preserve a record of the vote. As a majority controls the journals, it may have been apprehended that it might be made to appear that the proposal was duly passed, although lacking the requisite majority, and so it was required that the yeas and nays be entered. But, however. this may be, the principal thing is the record of the yeas and nays, and this purpose is accomplished as perfectly by the entry made as it would be by any other. As to preserving the identity of the amendment proposed, there is no greater difficulty in this matter than with reference to bills."

This view was adhered to in an opinion by Thornton, J., in Thomason v. Ashworth, 73 Cal. 73, 14 Pac. 615.

· Mr. Justice Brewer, than whom few, if any, have brought greater learning, ability, and wisdom to the Supreme Court of the United States, in Prohibitory Amendment Cases, 24 Kan. 700, in considering the identical question now presented for our consideration, said:

"The constitution provides that the 'proposed amendments, together with the yeas and nays, shall be entered on the journal.' Art. 14, sec. 1. Is the failure to enter this amendment at length on the journals fatal? It is well said by counsel that no change can be made in the fundamental law, except in the manner prescribed by that law. * * * In other words, proceedings under a constitution to change that constitution must be in accord with the manner prescribed by that constitution. But this only brings us to the real question in this case: Is a proposition to amend the constitution in the nature of a criminal proceeding, in which the opponents of change stand as defendants in a criminal action, entitled to avail themselves of any technical error, or mere verbal mistake; or is it rather a civil proceeding, in which those omissions and errors which work no wrong to substantial rights are to be disregarded? Unhesitatingly we affirm the latter."

The decision just mentioned was considered and quoted from at length by Maxwell, J., long an able and honored member of the Supreme Court of Nebraska, in Senate File No. 31, 25 Neb. 864, 41 N. W. 981. The court, in a unanimous opinion, concurred in the views expressed by Brewer, J., in the Kansas case.

In Cudihee v. Phelps, 76 Wash. 314, 136 Pac. 367, the Supreme Court of Washington, in an opinion by Parker, J., and unanimously concurred in, quoted with approval the language of the Supreme Court of California which we have quoted from Oakland Paving Co. v. Tompkins, supra. The same question was again before the court in Gottstein v. Lister, 88 Wash. 462, 153 Pac. 595, Ann. Cas. 1917D, 1008, the court adhering to the views formerly expressed.

The Supreme Court of South Dakota, in State ex rel. Adams v. Herreid et al., 10 S. D. 109, 72 N. W. 93, in considering this question, said:

"The conflict in the adjudications results from a diversity of opinion regarding the meaning of the phrase 'enter on their journals,' as used in the several state constitutions in reference to proposed amendments. The decisions cannot be reconciled. Perhaps it is proper to conclude that there is a slight preponderance of authority in favor of the identifying reference theory. This conflict existed in 1885, when our constitution was framed. It should be presumed that the members of the constitutional convention exercised the utmost care in selecting appropriate language to express the results of their deliberations. What the convention intended should be the method of amending the instrument then prepared should govern the legislature, and control this court in determining whether any alteration therein has been effected. In ascertaining what meaning the convention intended should be given the phrase in question, it would seem proper to presume that the convention was acquainted with the constructions which had been placed upon the same language, when used in the same connection, by the courts of the other states, and to presume that, had it been intended to restrict the legislature to one of these constructions, all doubt would have been removed by employing the words 'entered at large.' Not having added the words 'at large,' it is reasonable to infer that it was intended to allow the legislature the liberty of adopting either method of entry. In any event, language was employed which courts of the highest respectability have held to warrant either an entry in full or by an identifying reference. Under the modern methods of conducting legislative business, and preserving bills and joint resolutions, the action of the two houses and the contents of proposed amendments can be as safely and as surely preserved by one manner of entry as the other. The legislature having adopted a construction sustained by,

perhaps, the greater weight of authority—one which does not defeat any object intended to be secured by the constitution—such action on its part is entitled to consideration by this court in ascertaining what interpretation shall be given to the language under discussion."

The constitution of Maryland provides, as does ours, that a proposed amendment shall be entered on the journal. The supreme court of that state, in Worman v. Hagan, 78 Md. 152, 27 Atl. 616, 21 L. R. A. 716, in passing upon the sufficiency of the entry of a proposed amendment which read, "An act to amend section 1 of article 7 of the constitution of this state," said:

"We find that the legislature, by the act of 1890, c. 255, proposed an amendment to section 1 of article 7, and that the act was passed by three-fifths of all the members elected to each house. It was stated on the journal of each house that 'An act to amend section 1 of article 7, of the constitution of this state' was passed, and the yeas and nays are set forth, being more than three-fifths of all the members elected to each house. The requirements of the constitution were in all respects observed, unless it is necessary, as maintained by the appellants, that the act should be set out verbatim on the journals. Each house had the bill in its possession when it passed it, and the bill was fully and clearly identified by its title. There would have been no greater certainty if every word of it had been recited. We must give a reasonable construction to the words of the constitution. There was but one bill with this title. The entries on the journals of the two houses that this bill had been passed by the yeas and nays, which were stated, described their legislative action as distinctly as it could be expressed. The yeas and nays were associated as closely as possible with the enactment contained in the bill—that is to say, with the proposed amendment. It was not in the power of any person to mistake the meaning of the entry."

1. We have reviewed every case that has been called to our attention, or which we have been able to find,

throwing any light upon the question under consideration, and we are of the opinion that the authorities, when carefully analyzed, will be found to be opposed to the view urged in behalf of petitioner, except in the cases from the State of Iowa, and the first case in that state on the subject was by a divided court. In view of the holding by the great majority of the courts, it would seem that we would not hesitate in reaching the conclusion that the entry in the journal in question is a sufficient compliance with the constitutional requirements.

2. It is the contention that the constitutional convention intended that proposed amendments should be spread in full, at large, in extenso, upon the journal, so that no doubt might arise as to the provisions. This, in our opinion, is the only reason that can be urged to sustain the contention; yet, in view of another section of the constitution, we do not think there is any reason why we should hold that the constitutional convention so intended, but there are persuasive reasons to justify our taking the contrary view. We think it a fair presumption that the men comprising the constitutional convention were among the most learned, experienced and careful men of the then territory. Appreciating the great importance of the choice of the language which should be used, every word was carefully weighed. Hours were spent by our constitutional convention, in some instances, in considering the propriety of using a particular word. When a word is used in a statute or constitution, it is supposed it is used in its ordinary sense, unless the contrary is indicated.

A careful investigation fails to show that the constitutional convention used the word "entered," in the connection in which it is now considered, in any other sense than that ordinarily given it; and that the convention did not mean, when it provided that when a proposed amendment should be "entered" upon the journal, it should be spread thereupon in full, at large, in extenso, is, we think, amply justified from consideration of other

sections of the constitution. Section 18 of article 4 provides that "all bills or joint resolutions" passed by each house "shall be signed by the presiding officers of the respective houses, and by the secretary of the senate and clerk of the assembly"; and section 20 of article 5 provides:

"The secretary of state shall keep a true record of the official acts of the legislative and executive departments of the government, and shall, when required, lay the same * * * before either branch of the legislature."

Thus we see that ample provision was made for the preserving of the joint resolutions which might be adopted, in the identical language in which adopted. This seems to conclusively show the lack of necessity of spreading joint resolutions at large upon the journals, and hence the probable reason why the constitution does not provide for the entering in full of proposed amendments thereupon. In this connection, we think the language of this court in a unanimous opinion in the case of State of Nevada v. Swift, 10 Nev. 185, wherein the constitutional provisions mentioned were under consideration, is conclusive. The court said:

"Obviously, then, the journals have no greater intrinsic value as evidence than the enrolled bill, which, in compliance with the above-quoted provision of the constitution, is signed and attested by the very same officers who sign the journals."

While we do not deem it necessary, in the light of what has been said, to present further reasons for sustaining the sufficiency of the journal entry questioned in this proceeding, it may, nevertheless, be of interest, as well as of value, to call attention to a rule of law laid down by HAWLEY, C. J., one of our distinguished predecessors. The language to which we allude will be found in the opinion in the case of State v. Glenn, 18 Nev. 35, and reads as follows:

"The constitution does not deal in details. In construing the provision in question, we must consider the modes of thought which gave expression to the language

used, in connection with the usage and custom pertaining to the duty of the officer named in the constitution, in order to determine what was meant. The intention of those who framed the instrument must govern, and that intention may be gathered from the subject-matter, the effects and consequences, or from the reason and spirit of the law. Even where the language admits of two senses, each conformable to common usage, that sense should be adopted which, without departing from the literal import of the words, best harmonizes with the object which the framers of the instrument had in view. 'Perhaps the safest rule of interpretation, after all, will be found to be to look to the nature and objects of the particular powers, duties, and rights with all the lights and aids of contemporary history, and give to the words of each just such operation and force, consistent with their legitimate meaning, as may fairly secure and attain the ends proposed.' 1 Story, Const. sec. 405a. This rule is subject to some qualifications, which it is here unnecessary to discuss. Id. sec. 406. * * *

"We glean from this history that the coordinate departments of the state government, including among its numbers several persons who were members of the constitutional convention, have for the past nineteen years construed the provision of the constitution as giving the authority to the assistant clerk of the assembly and the assistant secretary of the senate to sign the bills and joint resolutions which passed the respective houses. The people of this state have acquiesced in that construction, and it has received the apparent sanction of the courts, although it has never before, to our knowledge, been called in question. Property and other rights have vested, and ought not to be overthrown unless it is manifest that the construction given by the other departments is absolutely erroneous. Even in such cases courts of great ability have hesitated, and, in some extreme cases, refused, to declare the law unconstitutional. But, from the views we have expressed, it will be observed that we do not consider the construction, as given by the other departments, erroneous.

We believe it is correct; still, if it is not free from doubt—and that, it seems to us, is the most that can be said—it is clearly our duty to give some weight to the construction, which has been deliberately given by the legislative and executive departments.    Evans v. Job, 8 Nev. 338.  'Great deference is certainly due to a legislative exposition of a constitutional provision, and especially when it is made almost contemporaneously with such provision, and may be supposed to result from the same views of policy and modes of reasoning which prevailed among the framers of the instrument expounded.'  People v. Green, 2 Wend. (N. Y.) 275."

See, also, 6 R. C L. 63.

The force of this language will be readily realized, in view of the fact that at an early period in the history of this state a proposed constitutional amendment was adopted, and the journal entry thereof was not in full, but was in the nature of an identifying reference only. See Journal of the Assembly, 1879, Ninth Session, at page 301, relative to Senate Joint Resolution No. 28, and Senate Journal of the same session, at page 221, relative to the same resolution.

It is urged by the learned attorney-general that the courts should not hold the amendment to the constitution in question invalid, for the reason that, if we were to do so, it would necessarily follow that many important laws upon the statute books would be affected thereby, among which he enumerates the act providing for the prosecution of felonies by information, the law conferring the right of suffrage upon the women of the state, certain laws relative to taxation, and laws pertaining to bonds for highway improvements.  Respectable authority exists sustaining the contention made, but, in view of the conclusions we have reached, we do not deem it necessary to pass upon this point, and for the same reason we do not think that we need to review other points urged upon us in behalf of respondent.

3. We come now to the second contention made in behalf of petitioner.  After setting forth the fact that the district attorney had elected to have the justice of

the peace hold a preliminary hearing, and that the justice made an order directing that a preliminary hearing be had upon the charge, the petition alleges "that said proceedings, election, and order, and the whole thereof, are contrary to law and void," for the reason that the justice of the peace has no jurisdiction to proceed with a preliminary hearing upon the ground that the district court has no jurisdiction in misdemeanor cases. To sustain the contention, our attention is invited to the case of Moore v. Orr, 30 Nev. 458, 98 Pac. 398. We have no doubt but that the court reached the correct conclusion in that case; and should the justice of the peace go through the formality of holding a preliminary hearing, and at the conclusion thereof order that the petitioner be held to answer to the district court, we are not prepared to say that jurisdiction would be acquired by the district court to proceed with the trial. On the other hand, if the contention of petitioner to the effect that the election of the district attorney and the order of the justice that a preliminary be held are null and void, such action stands, in legal effect, as though it had never been taken, and the justice of the peace has complete jurisdiction to proceed to trial upon the merits. Thus, assuming the contention of learned counsel for petitioner to be correct as to the law, for us to undertake to pass upon the legal question until a court which is without jurisdiction proceeds to exercise jurisdiction would be to pass upon a moot question—something courts invariably refuse to do. Pacific Live Stock Co. v. Mason Valley Mines Co., 39 Nev. 105, 153 Pac. 431.

It follows from what we have said that the writ heretofore issued herein must be discharged, the petitioner remanded, and these proceedings dismissed.

It is so ordered.