### LEE v. PRICE et al.

No. 2270. Decided June 2, 1919. (181 Pac. 948.)

CONSTITUTIONAL LAW — AMENDMENTS — "ENTERED" ON JOURNALS. Under Const. article 23, section ,1, providing that proposed amendments to the Constitution shall be entered on the journals of the two houses, it is not necessary to enter a proposed amendment upon the journals in full, but entry of an identifying reference is sufficient; "entered" not necessarily meaning to copy or to transcribe.

Petition for writ of prohibition by Arthur J. Lee against Price, a municipal corporation and others.

WRIT DENIED and complaint dismissed.

*L. A. McGee* of Price, for plaintiff.

*Ferdinand Ericksen* of Salt Lake City, for defendants.

WEBER, J.

Arthur J. Lee, a resident and taxpayer of Price, a city of the third class, commenced this action in this court to have defendants prohibited from selling and disposing of certain municipal bonds, the issue and sale of which had previously been authorized by the qualified electors of said Price at a special election duly called and regularly held "for the purpose of raising money for the purpose of supplying Price, Carbon county, Utah, with water, and to that end to improve the works for supplying said water, which said works are owned and controlled by said Price." The plaintiff alleges that the

total assessed valuation of the property of Price, upon which the bond issue was based is $1,729,142; that the municipality at the time of the election and at the time of the filing of the suit had a bonded indebtedness of $45,000, and that it had in its sinking fund for the payment and redemption of outstanding bonds the sum of $8,000.64; that as a city of the third class it had no legal right or authority to become indebted in the aggregate with all other indebtedness in any amount in excess of eight per cent. of the value of the taxable property for the purpose of supplying said city with water or for any other purpose whatsoever and, for the reasons aforesaid, no bonds could be lawfully issued for any amount in excess of approximately $101,000, whereas the city claims to have the right to bond in the sum of $170,000, upon the basis of twelve per cent. of the assessed valuation of the property, within the municipal boundaries.

The plaintiff prays that a writ of prohibition be issued prohibiting and enjoining the defendants, and each of them, from issuing, negotiating, or selling any of said bonds of said city in excess of $101,000, and that of the said proposed bond issue of $170,000 the amount of $69,000 be declared invalid and to be in excess of the debt limit of said city.

Defendants have interposed a demurrer to the complaint upon the ground that it does not state facts sufficient to justify the issuance of such a writ, and does not state facts sufficient to constitute a cause of action.

This proceeding raises the question as to the validity of an amendment to the Constitution of the state of Utah, same being an amendment to section 4 of article 14, in relation to the limit of indebtedness of counties, cities, towns, and school districts and authorizing cities of the third class to incur larger indebtedness than permitted under the theretofore existing Constitution for the purpose of raising money for supplying third class cities with "water, artificial light, or sewers, when the works for supplying such water, lights and sewers shall be owned and controlled by the municipality." Under the Constitution as it existed before the amendment the limitation of such indebtedness was not to exceed

eight per cent. while under the provisions of the amendment the maximum of such indebtedness was raised to twelve per cent. of the assessed valuation of the taxable property within the municipality.

Section 1, article 23, of the Constitution, prescribing how amendments may be made, reads as follows, so far as pertinent to this inquiry:

"Any amendment or amendments to this Constitution may be proposed in either house of the Legislature, and if two-thirds of all the members elected to each of the two houses, shall vote in favor thereof, such proposed amendment or amendments *shall be entered on their respective journals* with the yeas and nays taken thereon. * * * (Italics ours.)

It is alleged that Comp. Laws 1917, section 792, being the authority under which the city of Price proceeded to order and hold the bond election above described, was "attempted to be enacted by the Legislature of the state of Utah pursuant to the provisions of section 4, article 14, of the Constitution of the state of Utah which section of the Constitution was attempted to be amended by virtue of a resolution proposed and introduced as House joint resolution by Mr. Davis in the House of Representatives, one of the houses of the Legislature of the state of Utah, on or about the 4th day of February, 1909, but which said resolution so proposed was not entered on the respective journals of the two houses of the Legislature as required by section 1, article 23, of the Constitution of the state of Utah"; that is to say, that the resolution above described was not entered in the House Journal except by the way of an identifying description as follows: "H. J. R. No. 6 by Mr. Davis entitled 'A Joint Resolution Proposing an Amendment to Section 4 of Article 14 of the Constitution of the State of Utah, in Relation to the Limit of Indebtedness of Counties, Cities, Towns and School Districts;'" and that for the reason aforesaid the proposed amendment to the Constitution is invalid and of no effect, and consequently the statute under the provisions of which the city proceeded to bond is unconstitutional and void.

Comp. Laws Utah 1917, section 792, reads as follows:

"Any city or town in this state is hereby authorized to incur an

indebtedness not exceeding in the aggregate, with all other indebtedness, eight per centum of the value of the taxable property therein for the purpose of supplying such city or town with water, artificial light, or sewers when the works for supplying such water, light, and sewers shall be owned and controlled by the municipality; provided, that cities of the third class and towns may become indebted to an amount not exceeding in the aggregate, with all other indebtedness, twelve per centum of the value of the taxable property for the purpose of supplying such city or town with water, artificial light, or sewers when the works for supplying such water, light, and sewers shall be owned and controlled by the municipality, when the proposition to create such debt shall have been submitted to the vote of such qualified electors as shall have paid a property tax in the year preceding such election and a majority of those voting thereon shall have voted in favor of incurring such debt."

The parties have stipulated what purports to be the full proceedings had by the respective houses of the Legislature affecting said proposed amendment, and from the stipulation it appears that in the Senate Journal the resolution proposing the amendment was set out in full; that in the proceedings of the House of Representatives it was not set out at length, but was described as follows:

"H. J. No. 6 by Mr. Davis entitled 'A Joint Resolution Proposing an amendment to Section 4, of Article 14, of the Constitution of the State of Utah, in Relation to the Limit of Indebtedness of Counties, Cities, Towns and School Districts.' "

It is further stipulated by the parties that the identical resolution as set out in the proceedings of the Senate was duly enrolled and engrossed, signed by the presiding officers of the Legislature and the Governor, filed with the secretary of state, published in at least one newspaper in each county of the state for two months immediately preceding the next general election (held November 8, 1910), at which time the amendment was separately submitted to the electors for approval or rejection, and that at said election a majority of the electors voting thereon approved the same; the vote being for the amendment 10,018 and against it 5,652.

From the foregoing statement of facts it will be observed that the only question for determination is whether or not the amendment herein described was proposed in the manner

required by section 1, article 23, of our state Constitution, inasmuch as it appears that it was not entered in full or at length upon the respective journals of the two houses of the Legislature.

This inquiry involves a construction of the language employed, "such proposed amendment or amendments shall be *entered* on their respective journals." (Italics ours.) The provision just quoted is mandatory, and if the verb "entered" is synonymous with or means "entered at large" or "entered in full," the constitutional provision has not been complied with. In our opinion, "to enter" does not necessarily mean "to copy" or "to transcribe," and to enter upon the journals does not imply that an amendment must be copied in full or entered at large upon the journals of both houses of the Legislature or of either of them. Among the framers of our state Constitution were lawyers, jurists, and publicists of signal ability and varied experience. Their work was done with care and deliberation. At the time the constitutional convention was in session (1895) the courts of last resort of California, Kansas, Nebraska, and Maryland had construed the phrase in question, and had held that a constitutional requirement that an amendment shall be "entered" on the journals was sufficiently complied with by an entry on the journals of an identifying reference. Had the members of the constitutional convention not taken the view then entertained and indorsed by. the courts of the states named they would certainly have made themselves clearly understood, and would have said "entered in full" or "entered at large" as they did in section 8 of article 7 of the Constitution in which it is required that when a bill passed by the Legislature is not approved by the Governor and is returned by the executive with his objections, the house it originated in "shall *enter* the objections *at large* upon its journal." (Italics ours.)

Ever since the adoption of the Constitution the practice in the Legislature has been to enter proposed amendments by reference only and not in full. Referring to the fact that according to previous custom amendments had been spread at length upon the journals of both houses in Iowa, the majority

opinion of the Supreme Court of that state, in *Koehler &
Lange* v. *Hill,* 60 Iowa, 543, 14 N. W. 738, 15 N. W. 609, in
which it was held that the prohibition amendment adopted in
1882 was invalid because it had not been entered in full upon
the journals of the Iowa legislature said:

"Here we have a legislative construction of the Constitution which
should not and cannot be ignored."

By parity of reasoning we may well arrive at the conclu-
sion from the fact that no proposed amendment had ever been
entered in full upon the journals of the Utah Legislature
that:

"Here we have a legislative construction of the Constitution
which should not and cannot be ignored."

The only purpose of entering a proposed amendment upon
the journals is to keep a record that will be sufficiently certain
to identify the proposition to be submitted to the people, and
that the identical amendment proposed shall be the one voted
upon by the electors.   In the instant case it is conceded that
the proposed amendment was submitted to the people and
adopted by an overwhelming majority of the electors voting
thereon.   In our opinion it would do violence to both the
spirit and letter of the law to hold that the formal entry on
the legislative journals is subject to some technical criticism,
and that therefore the amendment should be declared void
and invalid and the expressed will of the people thwarted.
In the opinion in the *"Prohibitory Amendment Cases,"* 24
Kan. 499, Mr. Justice Brewer, who thereafter served with
distinction as a member of the Supreme Court of the United
States, brushed aside all sophistry and all technicalities, and
discussed the question under consideration in these clear and
forceful words:

"Is a proposition to amend the Constitution in the nature of a
criminal proceeding, in which the opponents of change stand as
defendants in a criminal action, entitled to avail themselves of any
technical error or mere verbal mistake; or it is rather a civil pro-
ceeding, in which those omissions and errors which work no wrong
to substantial rights are to be disregarded?   Unhesitatingly, we
affirm the latter.   *   *   *

"Again, in constitutional changes the popular voice is the para-
mount act.   While to guard against undue haste and temporary

excitement, to prevent unnecessary and frequent appeals to consti-tutional amendments, the assent of two-thirds of the Legislature is prescribed as a condition precedent, yet, after all, that which determines constitutional changes is the popular will. This is a government by the people, and, whenever the clear voice of the people is heard, Legislatures and courts must obey. True, a popu-lar vote without previous legislative sanction must be disregarded. There is no certainty that all who could would take part in such a vote, or that they who did, all realize that it was a final action. It lacks the sanction of law, is a disregard of constitutional methods and limitations, and should be taken as a request for a change, rather than as a change itself. But, notwithstanding this, legislative action is simply a determination to submit the question to popular decision. It is in no sense final. No number of Legis-latures, and no amount of legislative action, can change the funda-mental law. This was made by the people, who alone can change it. The action of the Legislature in respect to constitutional changes is something like the action of a committee of the Legislature in respect to the legislative disposition of a bill. It presents, it rec-ommends, but it does not decide. And who ever thought of declar-ing a law invalid by reason of any irregularities in the proceedings of the committee which first passed upon it? It is the legislative action which is considered in determining whether the law has been constitutionally passed; and it is the popular action which is prin-cipally to be considered in determining whether a constitutional amendment has been adopted."

Other cases supporting the doctrine adopted by Kansas are: *Oakland Pav. Co.* v. *Tompkins,* 72 Cal. 5, 12 Pac. 801, 1 Am. St. Rep. 17; *Thomason* v. *Ashworth,* 73 Cal. 73, 14 Pac. 615; *People* v. *Strother,* 67 Cal. 624, 8 Pac. 383; *West* v. *State,* 50 Fla. 154, 39 South. 412; *Worman* v. *Hagan,* 78 Md. 152, 27 Atl. 616, 21 L. R. A. 716; *In re Senate File* 31, 25 Neb. 864, 41 N. W. 981; *Gottstein* v. *Lister,* 88 Wash. 462, 153 Pac. 595, Ann. Cas. 1917D, 1008; *Cudihee* v. *Phelps,* 76 Wash. 314, 136 Pac. 367.

Both because of our conception of what should be the law and for the reason that we are supported by the weight of au-thority we conclude that it is not necessary to enter in full a proposed constitutional amendment upon the journals of the Legislature; that the amendment in question was properly adopted and is valid, and that the bonds offered for sale by the city of Price are not invalidated because of any reason as-

signed in plaintiff's complaint. It follows that the demurrer interposed by defendants should be sustained, that the writ of prohibition prayed for by plaintiff should be denied, and that the plaintiff's complaint should be dismissed. Such is the order.