## 10628

### THOMPSON v. LIVINGSTON, MAYOR

#### (107 S. E. 581)

1. CONSTITUTIONAL LAW—LEGISLATURE'S INTERPRETATION OF CONSTITUTIONAL PROVISION AS TO LEGISLATIVE PROCEDURE FOLLOWED BY COURT. —Legislature's interpretation of constitutional provisions as to legislative procedure ever since the adoption of the Constitution will be followed by the Court.

2. CONSTITUTIONAL LAW—CONSTITUTIONAL PROVISIONS AS TO LEGISLATIVE PROCEDURE IN AMENDMENT OF CONSTITUTION CONSTRUED—Under Const., art. 3, § 18, providing that no bill or joint resolution shall have the force of law unless it shall have been read three times on three several days in each house, etc., provided that either branch of the General Assembly may provide by rule for a first and third reading by title only, and, under Senate and House rules providing for the first and third reading of any bill or joint resolution by its title only, it was unnecessary for a yea and nay vote to be taken and entered on the journal upon the first readings of a joint resolution proposing a constitutional amendment and a bill ratifying the amendment, notwithstanding article 16, § 1, providing that a constitutional amendment may be proposed in the Senate or House if agreed to by two-thirds of the members by a yea and nay vote taken thereon, and that the amendment may be ratified after the election by a yea and nay vote after three readings on separate days, there being no requirement under such constitutional provision that the yea and nay vote be taken on each reading and it being sufficient if the two-thirds vote required be taken after the second reading.

3. EVIDENCE—JUDICIAL NOTICE TAKEN OF NUMBER OF STATE SENATORS. —In an action involving the question of whether legislative proposal and ratification of constitutional amendment was sufficient, the Court will take judicial notice of the fact that 45 Senators constitute the Senate.

4. CONSTITUTIONAL LAW—JOURNAL ENTRY OF NUMBER OF NAY VOTES ON READINGS OF BILL TO RATIFY. AMENDMENT UNNECESSARY.—It was unnecessary under Const., art. 16, § 1, relating to amendment of the Constitution, to enter on the journal the fact that no nay votes were cast on second and third readings of bill to ratify an amendment, recital as to number of aye votes being sufficient.

5. CONSTITUTIONAL LAW—FAILURE OF JOURNAL TO SHOW FACT THAT NO NAY VOTES WERE CAST ON SECOND READING OF JOINT RESOLUTION NOT FATAL.—Under Const., art. 16, § 1, prescribing the procedure for amendment of the Constitution, and in view of article 3, § 12, authorizing each house to determine its rules of procedure, and

Senate Rule No. 15, requiring the names of the Senators upon a yea and nay vote to be called alphabetically, a journal entry setting out names of 38 Senators voting aye on joint resolution proposing constitutional amendment on second reading thereof held sufficient, under article 3, § 18, requiring a yea and nay vote on second reading without entry of fact that no nay votes were cast, since it will be assumed in such case that no nay votes were cast.

Before BOWMAN, J., Orangeburg, May, 1921.    Affirmed.

Action by W. B. Thompson against W. A. Livingston, Mayor; A. C. Watson, et al., Councilmen of the City of Orangeburg, for an injunction. From an order refusing such injunction the plaintiff appeals.

The judgment of Judge Bowman referred to in the opinion is as follows:

This matter came up before me on application for injunction to restrain the city council of the city of Orangeburg from issuing bonds in the sum of $200,000, of which $40,000 were to be issued for the purpose of enlarging and extending the existing sewerage system of said city, and $160,000 for the purpose of paying for permanent street improvements in said city, the authority for which issue was alleged to be based upon an amendment to article 8, section 7, of the Constitution, ratified by an Act approved the 8th day of March, 1919, (see 31 St. at Large, p. 124), and of an election duly held in the city of Orangeburg, which resulted in favor of the issuance of said bonds, and ordinances of City Council, adopted the 21st day of April, 1921.

The petitioner is a resident, freeholder, and taxpayer in the city of Orangeburg, and seeks to restrain the issuance of above bonds on the ground that the same will be illegal and unconstitutional because the amendment to the Constitution on which the issuance of these bonds is based is unconstitutional for the following reasons:

(a) That the proposed amendment was introduced in the Senate by a joint resolution on the 24th day of January,

1918, and read for the first time and referred to the committee on judiciary without the yea and nay vote being taken and entered in the journal.

(b) That the said joint resolution received its second reading in the Senate on the 5th day of February, 1918, on which reading only the yea votes were recorded and entered in the journal of the Senate, the said journal of the Senate for that day not showing that any nay votes were taken or called for.

(c) That the said joint resolution received its third reading on the 6th day of February, 1918, on which reading only the yea votes were recorded and entered in the journal, the said journal of the Senate for that day not showing that any nay votes were taken or called for.

(d) That said act so passed in violation of the provisions of the Constitution was ratified in spite thereof on the 8th day of February, 1918.

(e) That the proposed amendment, having been submitted to the qualified electors of the State at the general election thereafter for Representatives following the ratification of the above act, received a majority of the votes in favor of such amendment, and thereafter a bill to ratify such amendment was introduced in the Senate on the 29th day of January, 1919, for the first time, and referred to the committee on judiciary without the yea and nay vote being taken thereon.

(f) That said bill on the 7th day of February, 1919, received its second reading, on which only the yea votes were taken, the journal of the Senate not showing the taking and recording of any nay vote, or that any were called for.

(g) That on the 17th day of February, 1919, the said bill received its third reading, on which reading only the

yea votes were taken, the journal of the Senate not showing the taking and recording of any nay votes, or that any were called for.

This matter was submitted to me on an agreed statement of facts, in which was set forth the various steps on the proposing and ratifying of this amendment as appears from the journals of the Senate, which extracts show as follows:

That on Thursday, the 24th day of January, 1918, a joint resolution was introduced in the Senate to amend section 7, art. 8, of the Constitution, by adding a proviso as to the city of Orangeburg, and this was read for the first time and referred to the committee on judiciary; that on Tuesday, February 5th, 1918, this joint resolution received its second reading, and that thereon the yeas and nays were demanded and taken, resulting in 31 yeas, the names of the Senators voting being set out in the journal; there was no entry in the journal as to the nay votes; that on February 6, 1918, this joint resolution received its third reading in the same way as the second reading, with the same entry, except that 38 Senators voted yea, and the joint resolution was passed and ordered enrolled for ratification; that on February 8th, 1918, this joint resolution was ratified; that the proposed amendment was voted on by the electors, and thereafter, at the 1919 session of Legislature, a bill was introduced to ratify this amendment, the Senate journal entries thereon showing as follows:

That on January 29, 1919, this bill was introduced, read for the first time, and referred to the committee on judiciary; that on February 7, 1919, it received its second reading, on which the yea and nay vote was demanded, which resulted in 29 yeas being cast, the names of the Senators so voting being set out, but no entry being made as to nay votes; that on February 17, 1919, the bill received its third reading in the same manner as the second reading, and resulted in 31 yeas being cast, the names of the Senators so

voting being set out, but no entry as to nay votes, and the said bill was enrolled for ratification; that on February 28, 1919, the act was ratified.

There was also introduced in evidence before me a certificate from M. M. Mann, who was the clerk of the Senate in 1918 and 1919, and who had charge of the journal of that body, to the effect that the number of Senators voting yea in the passage of the joint resolution and of the bill ratifying the amendment represent all of the Senators who were present in the Senate at that time, and that no nay votes were cast.

There were also introduced in evidence journals of the Senate of 1918 and 1919, and some prior thereto, in which my attention was called to the fact that on numerous occasions there were entered on the journal only the yea votes, where no nay votes were cast, the entry on nay votes being made apparently only when some nay votes had been cast; and my attention was also called to the similar entries in the House journal, for the purpose of evidencing to me the interpretation placed by the legislative bodies on the construction of the constitutional provision as to the entry of yea and nay votes where no nay votes were cast. I was also referred to the provision in article 3, § 18, of the Constitution, which provides that each branch of the General Assembly may provide by rule for a first and third reading of any bill or joint resolution by its title only.

In the agreed statement of facts was also set out the rules of the Senate and House for the sessions of 1918 and 1919. Rule 15 of the Senate provides that under the call of the yeas and nays every Senator present must give his vote one way or the other; and rule 39 provides that the first and third reading of each bill shall be by its title only, provided that on each third reading the bill shall be read in full on the demand of any Senator. Rule 24 of the House provides that on a yea and nay vote the clerk shall take the

names of all who vote aye and all who vote no, which he shall enter in the journal; and rule 25 provides that on a yea and nay vote every member who may be in the House when called, unless excused, shall give his vote under a penalty therein referred to. Rule 45 provides that the first reading of the bill shall be for information, and rule 46 provides that the bill shall be read by the title only on its first reading, unless the entire reading is called for by 10 members; and rule 48 provides that the third reading of the bill shall be by its title only, unless the reading of the entire bill is called for by 10 or more members.

The questions involved in this matter arise under the construction of article 16, § 1, of the Constitution. This section is as follows:

## "ARTICLE XVI.

"Amendment and Revision of the Constitution.

"Section 1. *Amendments.*—Any amendment or amendments to this Constitution may be proposed in the Senate or House of Representatives. If the same be agreed to by two-thirds of the members elected to each house, such amendment or amendments shall be entered on the journals respectively, with the yeas and nays taken thereon; and the same shall be submitted to the qualified electors of the State at the next general election thereafter for Representatives; and if a majority of the electors qualified to vote for members of the General Assembly, voting thereon, shall vote in favor of such amendment or amendments, and a majority of each branch of the next General Assembly shall, after such an election and before another, ratify the same amendment or amendments, by yeas and nays, the same shall become part of the Constitution: Provided, that such amendment or amendments shall have been read three times, on three several days, in each house."

27—s. c. 116

The questions may be summarized as follows:

1.   Was it necessary for a yea and nay vote to be taken and entered on the journal upon the first reading of the joint resolution and of the bill ratifying the amendment?

2.   Was the failure to enter on the journal the fact that no nay votes were cast on the second and third reading of either the joint resolution or the bill to ratify the amendment a violation of this section?

An examination of this section shows the following requirements:

1.   Any amendment to the Constitutioin may be proposed in the Senate or House.

2.   If the same be agreed to by two-thirds of the number elected to each house, such amendment or amendments shall be entered on the journals respectively.

3.   With the yeas and nays taken thereon.

4.   That the same shall be submitted to the qualified electors of the State at the next general election thereafter for Representatives, and if a majority of the electors qualified to vote for members of the General Assembly, voting thereon, shall vote in favor of such amendments.

5.   And a majority of each branch of the next General Assembly shall, after such an election and before another, ratify the same amendment by yeas and nays, the same shall become part of the Constitution.

6. Provided that such amendment or amendments shall have been read three times on three several days in each house.

We will consider the first question involved:

1, 2   Article 3, § 18, of the Constitution, provides that no bill or joint resolution shall have the force of law unless it shall have been read three times on three several days in each house, etc., provided that either branch of the General Assembly may provide by rule for a first and third reading of any bill or joint resolution by its title only.

Both the Senate and the House have adopted rules in conformity therewith providing for the first and third reading of any bill or joint resolution by its title only. A careful examination of the journals of the House and Senate since the adoption of the Constitution shows that the Legislature has interpreted this provision as meaning that the first reading of a bill is merely a formal matter on which no vote is taken, and I feel that the construction placed by the Legislature upon its own procedure for so many years should be regarded as the correct interpretation. The Courts of almost all of our States have adopted the rule that the legislative construction placed upon doubtful constitutional provisions is entitled to great weight and consideration, and raises a strong presumption that it is correct, and will generally be adopted by the Courts. *People v. Olson,* 245 Ill. 288, 92 N. E. 157; *Board of Education v. Sea,* 167 Ky. 772, 181 S. W. 670; *State v. Nashville Baseball Club,* 127 Tenn. 292, 154 S. W. 1151, Ann. Cas. 1914B, 1243.

In addition to this, section 1 of article 16 nowhere provides that the yea and nay vote shall be taken on each reading of the proposed amendment, the wording thereof being merely that it shall be agreed to by two-thirds of the members elected to each house and entered in the journals respectively with the yea and nay vote taken thereon, and where a yea and nay vote has been taken on the second reading, which is the only reading which is not required to be read other than by its title, and on such reading two-thirds of the members have agreed to such amendment, the provision of the Constitution has been complied with; and the same applies in the passage of a bill ratifying the amendment.

The objection, therefore, that the yea and nay votes were not taken on the first reading of the proposed amendment and on the first reading of the bill ratifying the same is overruled.

We will now consider the second question.

The entry in the Senate Journal upon the second reading of the Joint Resolution is headed: Passed by Aye and Nay Vote." "A joint resolution to amend Section 7, Article VIII, of the Constitution, relating to municipal bonded indebtedness by adding a proviso thereto as to the city of Orangeburg." The proposed amendment is then set forth with the provision for the submission to the electors. The journal entry then continues, "The question 'Shall the joint resolution pass the second reading and be ordered to a third?' was taken, on which the yeas and nays were demanded and taken, resulting as follows: Yeas—(names of 31 Senators set out)—31. The joint resolution, having been read the second time, and having received the necessary two-thirds vote of the Senate, was passed and ordered placed on the calendar for a third reading."

On the third reading the same entry appears, with the exception that the names of 38 Senators were set out as voting yea, and the joint resolution was ordered for ratification. On neither reading was any entry made as to nay votes.

It is admitted that the proposed amendment was duly submitted to the electors at the ensuing general election thereafter, and that the vote resulted in favor of such amendment. The bill ratifying this amendment was introduced in the succeeding Legislature, and on the second reading of the bill the following journal entry appears in the Senate Journal relating to the second and third readings: "Passed by Aye and Nay Vote." "A bill to ratify an amendment to section 7, article VIII, of the Constitution, relating to municiapl indebtedness, by adding a proviso thereto as to the city of Orangeburg." "The question 'Shall the bill pass the second reading and be ordered to a third?' was taken, on which the yeas and nays were demanded and taken, resulting as follows: Yeas—(names

of 29 Senators are set out)—29." The bill, having been read the second time, and having received the necessary vote of the Senate, was passed and ordered placed on the calendar for a third reading. The entry in the journal on the third reading is the same as the above, with the exception that it shows the names of 31 Senators voting yea. and the title of the bill is changed to an act and enrolled for ratification. On neither reading was any entry made as to nay votes.

The Court will take judicial notice of the fact that 45 Senators constitute the Senate of South Carolina, and that, therefore, of the votes which were cast the necessary two-thirds voted on the joint resolution and the necessary majority on the passage of the bill to ratify the amendment.

Petitioner, in his objections, has regarded the requirements of the Constitution as to journal entries to be the same both on the passage of the proposed amendment and bill ratifying the same. This is erroneous, as the Constitution provides for journal entries of the yea and nay vote only on the passage of the proposed amendment, and the passage of the ratifying act provides only for the taking of yea and nay vote, without requiring a journal entry. Therefore all objections raised as to the failure of the journal to show an entry of the nay votes on the passage on the ratifying act are overruled. The passage of this ratifying act comes within the rule laid down in *State ex rel. Hoover v. Chester,* hereafter referred to, and the journal of the Senate cannot be used to impeach it.

This leaves for determination: Is the failure of the journal to refer to the nay vote by any entry, other than the declaration that the aye and nay vote was taken, a violation of the Constitution? The answer to this depends upon whether the constitutional

provision requires it. I have subdivided the requirements of article 16, § 1, under which this question arises, and will now see if each of the requirements was complied with.

(1) The amendment was proposed by joint resolution in the Senate.

(2) It was agreed to by two-thirds of the members elected to each house, and the amendment was entered on the journals respectively on the second and third reading thereof.

(3) The yeas were entered, but the journal was silent as to nays.

Under article 3, § 12, of the Constitution, each house shall determine its rules of procedure. Rule 15 of the Senate provides that "In taking the yeas and nays, and upon a call of the Senate, the names of the Senators shall be called alphabetically. Under the call of the yeas and nays every Senator present must give his vote one way or another."

The journal entries on the joint resolution and bill to ratify the amendment set out, "Passed by Aye and Nay Vote. The question 'Shall the joint resolution, etc.,' was taken, on which the yeas and nays were demanded and taken, resulting as follows: Yeas—(names of 38 Senators set out)—38."

In view of the rule that the names of the Senators shall be called alphabetically, and that every Senator present must give his vote one way or another, a reasonable construction follows that this is an entry that no nay votes were cast. The Constitution (article 16, § 1) provides only for the entry of the yeas and nays taken and therefore if there were no nays there could be no entry required; the entry of a vote taken means the recording of a vote cast, and if no nay votes were cast there was nothing to enter. No declaration of this absence of a dissenting vote is anywhere in the Constitution required to be made. Under these cir-

cumstances it would be an impeachment of a journal entry
to hold, where the journal shows a roll call, and records as
the result of that call only yea votes, that the entry is not
complete because it does not state that no nay votes were
cast, and therefore there might have been some.

In *State ex rel. Hoover v. Chester,* 39 S. C. 307, 17 S. E.
752, and the subsequent cases following it, our Supreme
Court has held that "It is not competent to impeach an act
duly passed, ratified, and approved by the journals of the
houses or any other evidence, other than the evidence of
the prerequisite fixed by the Constitution, which are re-
quired to be shown by the journals, as for instance the votes
of two-thirds of the members by ayes and noes to be en-
tered on the journal in certain cases."    Applying this rule
to the case which is one under which the voters of two-
thirds of the members by ayes and noes are to be entered
on the journal, the test, in my opinion, is this:    Does
the journal show the votes? It says that it does, for it
states that the yea and nay votes were taken and sets forth
what were cast.

Similar provisions of the Constitution have been con-
sidered by the Courts in other States and decided contrary
to the position of the petitioner. *Board of Commissioners
v. Trust Co.,* 143 N. C. 110, 55 S. E. 442.

The Constitution of North Carolina required the entry in
journal of aye and nay vote on the act involved in that case.
The journal entry showed—Ayes 39; Noes——.    Then
followed a list of those voting in the affirmative, with no
reference to those voting in the negative.

"After much reflection, we are unwilling to follow the
decision of the Court in" the case of *Debnam v. Chitty,* 131
N. C. 657, 43 S. E. 3, "in so far as it holds that the entries
upon the journal do not indicate that there were no negative
votes.    In the dissenting opinion of Mr. JUSTICE CLARK it
is said:    'The expression, "passes by the following vote,

Ayes, 94 (giving names); Nays, ——," is as expressed and intelligent declaration that there were no negative votes as if the word "none" had been used. "Nays, ——," after the words "Passes by the following vote," and giving those voting aye, can convey no other meaning. Is it not hypercritical to say that "Nays, ——" did not mean that there were no names in the negative?" This provision in our Constitution serves an important purpose in compelling each member present to publicly assume his share of the responsibility in the passage of such legislation, but more particularly in furnishing conclusive evidence whether the bill has been passed by a constitutional majority. In passing upon a similar question the Supreme Court of Illinois says: 'The Constitution prescribes this as the test by which to determine whether the requisite number of members vote in the affirmative. * * It must appear on the face of the journal that the bill passed by a constitutional majority.' *Spangler v. Jacoby,* 14 Ill. 297, 58 Am. Dec. 571; Cooley's Constitutional Limitations (7th Ed.) 201. The entries upon the Senate journal give the names of a large majority of the total membership of that body as voting for the passage of this bill upon the second and third readings, so that there can be no question of its passage by a constitutional majority. But the entries indicate further that the bill passed by a unanimous vote, and that there were no names to be recorded as voting in the negative."

See *Board of Commissioners v. Tollman,* 145 Fed. 753, 76 C. C. A. 317. The same question was involved in this case as in the case of *Board of Commissioners v. Trust Company,* supra. The Court, in discussing that case, and the case of *Debnam v. Chitty,* says at page 766 of 145 Fed., at page 330 of 76 C. C. A.:

"In *Debnam v. Chitty,* the Constitution is construed to mean: It is the duty of the clerk to enter the yea and the nay votes, and if there be no nay votes, it is further his

duty to affirmatively so state. The Constitution is not thus written, and we find ourselves unable to reach the conclusion that such intent is either necessarily or fairly to be implied. The subject then under consideration by the constitutional convention was known to be of such far-reaching importance that we are constrained to believe that such intent, had it existed, would not have been left to mere implication. Moreover, we have been able to think of no sufficient reason for adding to the Constitution by implication such a requirement. If all the votes cast are affirmative (and it is clear that such is here the only permissible hypothesis), and if all these are duly entered, we do not perceive why the Constitution makers should have intended that something further be added to the record; especially as such further matter is necessarily a mere conclusion, which under the rules of law must be drawn in any event from the silence of the record. The Constitution in the words selected by its authors requires the entry of votes. In entering on the journal 'nay votes, none,' the clerk is undeniably not entering nay votes. As the Constitution is silent concerning nay votes in cases where the only votes cast are yeas, we think the proper, if not the necessary, implication is that no entry concerning the non-existent nay votes is required."

And at page 767 of 145 Fed., at page 331 of 76 C. C. A., says:

"It will be observed that we do not base our conclusion on the distinction * * * between an entire want of entry concerning non-existent negative votes and the entry 'Nay, ———,' to write or have printed the word 'nay' at the foot of a roll call record, and to leave entirely blank the space thereafter intended for the number of negative votes, seems to us practically the same thing as making no mention of nay votes."

*People v. Bowman*, 247 Ill. 276, 93 N. E. 244:

"The journal of the Senate of the Forty-fifth General Assembly was produced in evidence for the purpose of showing that the act was not passed in the Senate in the manner required by the Constitution. The journal shows that the bill was read a third time, 'and the question being, "Shall this bill pass?" It was decided in the affirmative by the following vote: Yeas, 34. The following voted in the affirmative,' followed by the names of 34 Senators. The Constitution requires the vote upon the final passage of all bills to be by yeas and nays and to be entered upon the journal. The objection made is that the nay votes are not entered upon the journal, and it is not expressly stated that there were none. It is competent to go behind the printed statute book and the enrolled act and to show by the journal of either branch of the Legislature that the act was not passed in the mode prescribed by the Constitution. The journals of the Senate and House of Representatives must be accepted as containing a true record of the proceedings of those bodies. They must show on their face a compliance with every requirement of the Constitution, from the introduction of the bill until its final passage, or it will not become a law. The silence of the journal as to anything required to be shown is evidence of its non-existence. *Spangler v. Jacobi,* 14 Ill. 297, 58 Am. Dec. p. 571; *People v. Stern,* 35 Ill. 121, 85 Am. Dec. 348; *Ryan v. Lynch,* 68 Ill. 160. If the journal fails to show anything which, if it had occurred, should have appeared on the journal, the failure of the journal to show it is evidence that it did not occur. If there had been any negative votes upon the passage of the bill in question they should have been recorded in the journal. The fact that none are recorded is evidence that there were none. The effect of the record in the journal is that the bill was passed by a vote of 34 yeas and no nays."

This doctrine was reaffirmed in *Neiberger* v. *McCullough,* 253 Ill. 312, 97 N. E. 660. The reasoning in the

above cases is convincing. It is certainly the rule of reason. The journals show a large number of amendments to the Constitution to have been adopted under the same kind of journal entries, and to hold on a mere technical construction that such were not proper would be to declare unconstitutional amendments to the Constitution which have been accepted and acted upon for a number of years, and under which many public improvements have been made possible, and on the faith of which credit has been extended to many municipalities. I realize that these facts should not influence me in a judicial determination, but I have merely mentioned them as one of the reasons why a liberal and reasonable construction should be given to this provision of the Constitution.

(4) The proposed amendment was properly submitted to the qualified electors, a majority of whom voted in favor thereof.

(5) A majority of each branch of the General Assembly after such election ratified the same amendment by yeas and nays, and this I have previously held in this decree was properly done.

(6) The amendment was read on three several days in each house.

It is therefore ordered that the injunction prayed for be, and is, hereby refused.

*Messrs. Raysor, Moss & Lide,* for appellant, cite: *Amendment of Constitution regulated*: Art. XVI Const. 1895. *Senate Journal must be looked to*: 100 S. C. 173 *Failure of journal to show negative votes is fatal*: 131 N. C. 657, 43 S. E. 3; Modified in 143 N. C. 110, 55 S. E. 442; also see: 200 S. W. 997, (Ark.); 33 Ark. 17.

*Messrs. John S. Bowman, Nathans & Sinkler,* for respondents, cite: *Case at 131 N. C. 657 was overruled in*

143 N. C. 110. ` There was substantial compliance by the Legislature:* 12 S. C. 289; 145 Fed. Rep. 765; 93 N. E. 244; 43 S. E. 3

June 2, 1921.

The opinion of the Court was delivered by MR. JUSTICE COTHRAN.

For the reasons assigned by his Honor, Judge Bowman, it is the judgment of this Court that the judgment of the Circuit Court be affirmed.