13337

WEEKS v. RUFF, COUNTY SUP'R, ET AL.

(162 S. E., 450)

*Mr. B. V. Chapman,* for plaintiff,

*Messrs. I. H. Hunt, John F. Clarkson* and *R. E. Whiting,* for respondents,

January 27, 1932.

The opinion of the Court was delivered by MR. JUSTICE BONHAM.

The plaintiff brings this action to test the validity of Legislative proceedings which culminated in a proposed amendment to Section 5, Art. 10, of the Constitution relating to the issuance of bonds for the payment and funding of certain indebtedness of Newberry County. The prayer of the complaint is that the amendment submitted be declared

to be null and void; that the Act of the General Assembly which submitted the question of thus amending the Constitution is unconstitutional; and that the defendants be enjoined from issuing bonds of Newberry County in pursuance of said Act.

A subsidiary question is made if the Act of the General Assembly is upheld, viz., whether the proceeds of the bonds to be issued thereunder may be applied to the payment of interest on the indebtedness to be refunded, which has accrued since the passage of the Act.

A brief summary of the history of the case may be made in this wise:

The County of Newberry found itself in debt which if put in the shape of bonds would approach, if it did not exceed, the limitation of 8 per centum of all the taxable property of the county, as it is fixed by Section 5, Art. 10, of the Constitution of the State.

In order to care for this situation the Newberry House Delegation, at the 1930 session of the General Assembly, introduced in the House a Joint Resolution couched in this language and form:

"H. 1015.—Newberry Delegation: A Joint Resolution to amend Section five of Article 10 of the Constitution relating to bonded indebtedness, by adding a provision thereto as to the County of Newberry:

"Be it resolved by the General Assembly of the State of South Carolina:

"Section 1. That the limitations imposed in Section five (5), Article ten (10), shall not apply to the bonded indebtedness incurred by the County of Newberry when the proceeds of any bonds issued by the County of Newberry are used exclusively for funding purposes of said county."

The Resolution was adopted by the House with all the prescribed requirements of the Constitution; the yeas and nays were taken on the passage of the Resolution and the vote was recorded in the journal; the vote being unanimous in favor of the passage of the Resolution.

Thereupon the Resolution was sent to the Senate, which body returned it to the House with these amendments: ·

"Amend title by striking out 'relating to bonded indebtedness by adding a provision thereto as to the County of Newberry,' and inserting the following: 'By adding thereto a provision relating to notes and bonds heretofore issued by Newberry County and providing for the payment, funding or refunding of the same.' "

"Amend by striking out all after the enacting words and insert in lieu thereof the following: Section 1. That the following amendment to Section 5 of Article X of the Constitution of South Carolina be agreed to; add to the end of the said Section the following words: 'All notes and bonds heretofore issued by Newberry County and now outstanding and unpaid are hereby validated; and the General Assembly may authorize said County to issue its bonds for the purpose of paying, funding or refunding the said notes or bonds, notwithstanding any limitation contained in the Constitution.' "

When the Joint Resolution as amended was returned to the House it was submitted in the following form:

"The Senate returned to the House with amendments the following:

"H. 1015.—Newberry Delegation (S. 958): A Joint Resolution to amend Section five of Article 10 of the Constitution relating to bonded indebtedness, by adding a provision thereto as to the County of Newberry."

"The Senate amendments were agreed to, *and · the Bill having received three readings in both Houses* (italics added) it was ordered that the title be changed to that of an Act and that it be enrolled for ratification."

Nothing further appears upon the House Journal in relation to its action upon the Senate amendment to the Bill.

The Joint Resolution was duly ratified and approved by the Governor. See 36 St. at Large, 1091.

The question was submitted to the people at the General Election of 1930, and the amendment was adopted.

At the succeeding session of the General Assembly of 1931 the amendment was ratified with strict compliance with all constitutional requirements. See 37 St. at Large, 103.

The validity of the "Submitting Resolution," and consequently of the constitutional amendment, are attacked upon the ground: The entries appearing upon the journal of the House do not show compliance with the formalities for the adoption of an amendment to the Constitution as they are set forth in Section 1 of Article 16 of that instrument, in that, they do not show that the amendments were entered upon the journal of the House with the yeas and nays thereon; and that it is not shown that the Resolution as amended by the Senate was read three times in the House.

The provisions of Section 1, Art. 16, thus invoked follow: "Amendments.—Any amendment or amendments to this Constitution may be proposed in the Senate or House of Representatives. If the same be agreed to by two-thirds of the members elected to each House such amendment or amendments shall be entered on the journals respectively, with the yeas and nays taken thereon. * * * "

It is admitted that the method pursued by the House in passing upon the amendments to the "Submitting Resolution" of the House is that which by long custom has prevailed in that body. It may be conceded that if the proposed amendments are of such nature as to create so radical a difference from the original Resolution as to make of it a new Act, the failure to read the amendments three times and to spread them on the minutes would be a fatal defect. But if the proposed amendments preserve the identity of the submitting Resolution, if it preserve and maintain its intent and purpose, and the change is one of language, or of phraseology and not of substance, the failure so to read and so to enter is not fatal.

The purpose of these provisions of the Constitution relating to amendments are that the members of the General Assembly may be fully apprised of the thing

sought to be accomplished by the proposed Resolution. Having heard it read by its title the first time and in full the second time, they may not, having been lulled into security, have passed by them a Resolution differing entirely from that which they supposed they were voting upon. Therefore the title must plainly express the contents of the Act.

The certificate of the Secretary of State attached to the answer of the respondents shows that: The submitting Resolution adopted by the General Assembly of 1930 as amended is on file in his office; that it received three readings in each House; that it was signed by the President of the Senate and the Speaker of the House of Representatives; that it was duly ratified and approved by the Governor; that the Great Seal of the State was duly affixed thereon; it was submitted to the people in the election of 1930 and the majority of the votes thereon were in favor of the amendment; a Bill to ratify the amendment was introduced in the 1931 session of the General Assembly and read three times on three several days in each branch of the Assembly; that a yea and nay vote was taken on second and third reading in the House; was duly ratified as an Act; approved by the Governor and the Great Seal of the State affixed thereon.

The case of *Stevenson v. Carrison*, 122 S. C., 212, 115 S. E., 251, 252, is authority for the position that if the amendment to the Joint Resolution is of such a nature as to satisfy the Legislature that it is consistent with the Resolution as already approved, the Joint Resolution as amended does not violate the provisions of Section 1, Art. 16, of the Constitution.

We quote from the brief of the respondents' counsel: "It is a generally recognized and accepted rule that a construction of the Constitution adopted by the Legislative department and long accepted by the various agencies of government and the people, is, where the meaning of the language construed is capable of two interpretations, entitled to great weight."

Cooley's Constitutional Limitations (8th Ed.), 147, 148, citing many supporting authorities. One of these authorities quoted by Judge Cooley is *Rogers v. Goodwin, 2* Mass., 475, which is to this effect: "We cannot shake a principle in which practice has so long and so extensively prevailed. If the practice originated in error, yet the error is now so common that it must have the force of law. The legal ground on which this provision is now supported is, that long and continued usage furnishes a contemporaneous construction, which must prevail over the more technical import of the words."

This is analogous to the principle announced in *Herndon v. Moore,* 18 S. C., 339, and which grew out of the decision of the constitutional issues involved in the case of *Davenport v. Caldwell,* 10 S. C., 317. After the adoption of the Constitution of 1868, the Legislature passed an Act which attempted to confer upon Probate Courts the power to partition real estate. The power was universally exercised by the Probate Courts of the several counties of the State. Thousands of acres of land were sold for partition by these Courts. The constitutionality of the Act conferring the power was attacked in the case of *Davenport v. Caldwell, supra.* An opinion handed down from the November, 1877, term of the Supreme Court held the Act to be unconstitutional. There ensued widespread consternation and anxiety on the part of those who had purchased lands at such sales lest their title be declared invalid. The issue was brought to head in the case of *Herndon v. Moore,* 18 S. C., 339, which was heard on circuit by that great Judge, J. H. Hudson. In his decree he said this: "It thus appears that not only the profession at large, and the Probate Courts, but the Circuit Courts and the Supreme Court have all recognized and acted upon a conceded jurisdiction to Courts of Probate in matters of partition. *Communis error facit jus.* * * * I cannot think that the decision in *Davenport v. Caldwell,* 10 S. C., 317, can affect rights thus vested." This judgment was affirmed by the Supreme Court.

See, also, *Thompson v. Livingston,* 116 S. C., 412, 107 S. E., 581; *Bradford v. Richardson,* 111 S. C., 205, 97 S. E., 58.

"If certainty in the essentials is secured, though the mode of attaining it laid down in the Constitution has not been literally followed, but has been deviated from in some particulars not at all detracting from the right of the electors to vote upon the identical amendment which has been proposed, we ought not to say that the ultimate object has not been attained by reason of failure to literally follow the specific method prescribed for its attainment." 41 A. L. R., 641, note. *Durfee v. Harper,* 22 Mont., 354, 56 P., 582.

"The rule has been laid down that after ratification by the people every reasonable presumption will be indulged in favor of the validity of an amendment to a state constitution. * * * The view is taken that substance is more important than form, and that the will of the Legislature lawfully expressed in proposing an amendment, and the will of the people expressed at the proper time and in the proper manner in ratifying such amendment ought not to be disregarded." 6 R. C. L., 31.

In the case of *Ex Parte Ming,* 42 Nevada, 472, 181 P., 319, 6 A. L. R., 1216, this is laid down: "The spreading of a proposed amendment to the Constitution at large upon the legislative journals is not required by a constitutional provision that it must be entered in the journals, but an identifying reference, such as the bill number and purpose of the amendment, is sufficient."

In the annotations to that case the annotator announces the following: "In the majority of jurisdictions a requirement that a proposed constitutional amendment shall be entered in the journals of the Legislature by which it is proposed is not construed to mean that it must be set out verbatim in the legislative journals, but full and clear identification by title on the journals is sufficient to make the amendment valid."

In *Oakland Paving Company v. Tompkins,* 72 Cal., 5, 12 P., 801, 1 Am. St. Rep., 17, the question submitted was whether a proposed amendment to the Constitution complied with the requirements of the Constitution that an amendment shall be entered in the journals with the yeas and nays taken thereon; the Court held that the amendment was not copied into the journal, but there was entered an identifying reference; that is, it was proposed as a Senate bill, and was referred to by title and number, and yeas and nays entered as directed. It was held that there was sufficient entry within the meaning of the constitutional requirement.

In our present case this joint resolution originated in the House. It was read first by its title; then in full and the yeas and nays taken and entered. It is urged in argument that when the resolution came back from the Senate it was so altered by amendment as to be a new and different resolution, which made it necessary to read the bill three times on three several days and take the yeas and nays thereon. In other words, the contention is that the Senate destroyed the identity of the House resolution and created a distinctly different one. We do not agree with this contention.

The intent and purpose of the joint resolution is thus expressed:

| By the House: | By the Senate: |
|---|---|
| "That limitations imposed in Section five (5) of Art. ten (10) of the Constitution of South Carolina shall not apply to the bonded indebtedness incurred by Newberry County when the proceeds of any bonds issued by the County of Newberry are applied exclusively for funding purposes of said County." | "All notes and bonds heretofore issued by Newberry County and now outstanding and unpaid are hereby validated; and the General Assembly may authorize the said County to issue its bonds for the purpose of paying, funding or re-funding the said outstanding notes and bonds, notwithstanding any limitations or restrictions contained in this Constitution." |

To use the grammarian's rule, let us "parse" these two sentences.

Through each of them runs the patent purpose of so amending the Constitution as to relieve the County of Newberry of the limitation that its debt shall not exceed 8 per centum of its taxable property; throughout each of them is the apparent purpose of permitting Newberry County to issue bonds for the purpose of taking care of its indebtedness by paying or funding it. The only difference between them is that the Senate amendment validates certain notes and bonds theretofore issued by Newberry County, the validity of which debts was in question. The House resolution did not in express terms provide for the validation of those doubtful debts. But the fact that it sought the legal right to issue bonds with which to pay or fund them carries with it the necessary implication that the county proposed thus to acknowledge the validity of these obligations. The same general purpose is so plainly stated in the joint resolution of the House and the amendment by the Senate as to maintain the identity and purpose of the submitting resolution as it passed the House. It came back to the House with its own number on it and reference to its own language. The addition of the words which provided for the validating of the certain indebtedness could not possibly envelop the intent and purpose of it in such fog as to deceive and mislead the members of the General Assembly into voting for a measure other than that they thought they were voting for.

We think the legislative intent was to provide for the payment or funding of the entire debt of the county; this necessarily included interest, which is an integral part of the obligations if they be interest-bearing ones.

We think the conclusions reached are in accord with the rule of reason and the principles of law. To hold otherwise would, as Judge Mauldin said in the case of *Stevenson v. Carrison, supra,* "sacrifice of substance to form." There is ancient and high authority for this principle in the declaration of the Greatest of the Apostles, who was himself a

lawyer, when he said: "For the letter killeth, but the spirit giveth life."

The judgment of the Court is that the submitting resolution was legally passed; that the amendment to the Constitution was legally adopted and is valid; that Newberry County may lawfully issue her bonds for the purposes named in the joint resolution as amended and adopted.

It follows that the complaint must be dismissed, and it is so ordered.

MR. CHIEF JUSTICE BLEASE and MESSRS. CIRCUIT JUDGES SEASE, FEATHERSTONE, MANN, GRIMBALL, RAMAGE, GREEN, STOLL, and JOHNSON, concur.

MR. CIRCUIT JUDGE DENNIS concurs in result.

MESSRS. JUSTICES STABLER and CARTER, and MESSRS. CIRCUIT JUDGES RICE and TOWNSEND dissent.

MR. JUSTICE COTHRAN did not participate on account of illness.

MR. CIRCUIT JUDGE J. HENRY JOHNSON (concurring): I concur in the opinion of Mr. Justice Bonham herein, but desire to make the following additional observations: As stated by him, the underlying purpose of the joint resolution, as introduced in the House of Representatives, and as amended in the Senate, was to (1) lift the constitutional limitation upon the bonded indebtedness of Newberry County (2) when the proceeds of newly issued bonds were applied to the liquidation of that county's obligations. Under the resolution as passed by the House, bonds might have been issued for the retirement of indebtedness incurred in the future; certainly they could be issued for the discharge of any and all kinds of obligations. Under the Senate amendment, they could be issued solely for the payment of existing indebtedness, and only then when the same was already evidenced by outstanding notes and bonds. Expressed differently, the scope of the "submitting resolution," as introduced into, and passed by, the House of Representatives, was much broader than that contemplated or permitted by the language

of the Senate amendment, which latter narrowed or restricted the purposes for which new bonds might be put into circulation solely to the retirement of existing notes and bonds. I concede that, if a resolution passed by one branch of the assembly be so amended by the other as to broaden or enlarge the authority conferred by the resolution in its original form, the change is so material, substantial, and radical as to require the adoption of such amendment by the originating body by a yea and nay vote; but, when an amendment by either branch of the assembly to a resolution passed by the other merely limits and restricts the scope of the authority conferred, the change made by such an amendment is not substantial or material in the sense that, when the same is returned to the body in which it originated, it must be agreed to by a yea and nay vote, recorded upon the journal. In the case here made, every form of indebtedness authorized to be liquidated by the issuance and sale of bonds under the Senate amendment could have been liquidated under the authority conferred by the House resolution, hence the change in the original resolution worked by the amendment was not so substantial as to necessitate the adoption of the latter by a yea and nay vote when the same was returned to the House.

MR. JUSTICE STABLER (dissenting): This is an action brought in the original jurisdiction of the Court by a citizen and taxpayer of Newberry County for the purpose of enjoining the defendants, who are officials of that county, from issuing county bonds pursuant to an Act approved March 13, 1931, which purports to authorize the Newberry County Board of Commissioners "to issue and sell bonds of Newberry County in an aggregate principal amount not exceeding Eight Hundred Thousand ($800,000.00) Dollars for the purpose of funding or paying any outstanding notes of said county which have been validated by the Constitution of South Carolina or any amendment thereto." Acts of 1931, p. 918.

It is agreed that the notes referred to in the statute were invalid in their inception, being without warrant of constitutional authorization at the time they were given, that they were issued when the county's bonded debt was already practically as great as the amount permitted by Section 5 of Article 10 of the Constitution; that they were not issued in anticipation of current taxes for current expenses; and that they are not at the present time valid obligations of the county unless it can be said that they have been validated by amendment to the Constitution, relating to Newberry County, which was proposed by a resolution passed at the 1930 session of the General Assembly. Acts 1930, p. 1091.

In conformity with the resolution, the proposed amendment was submitted to the qualified electors of the state at the 1930 election and was approved. At the following session of the General Assembly a bill to ratify the amendment was introduced, was passed by both Houses of the General Assembly, a yea and nay vote being taken thereon in each branch, was ratified in joint session of the two Houses, and was approved by the Governor. Acts of 1931, p. 103. Subsequently and at the same session, the Legislature enacted the statute under which the defendants propose to issue the bonds in question.

The plaintiff does not attempt to impeach the method of submission of the proposed amendment to the people or its subsequent ratification by the Legislature, but alleges that the resolution proposing the amendment was not adopted in the manner provided by Section 1 of Article 16 of the Constitution—which requires that a proposed amendment to the Constitution must be agreed to by two-thirds of the members elected to each House and must be entered on the journals of the Houses, respectively, with the yeas and nays taken thereon, before being submitted to the qualified electors of the State—and that, therefore, the amendment did not become effective as a part of the Constitution and consequently the 1931 statute is unconstitutional.

The defendants very properly interposed no objection to a consideration by the Court of the journals of the two Houses of the General Assembly for the purpose of determining whether the prescribed formalities had been complied with in the passage of the submitting resolution, resort to such journals being proper for such purpose. *State ex rel. Hoover v. Chester,* 39 S. C., 307, 17 S. E., 752; *Thompson v. Livingston,* 116 S. C., 412, 107 S. E., 581; *Wingfield v. South Carolina Tax Commission,* 147 S. C., 116, 144 S. E., 846.

The "submitting resolution" of 1930, which is the center of the contest, originated in the House, and as introduced in that body, proposed to amend Section 5, of Article 10, of the Constitution relating to bonded indebtedness, by adding thereto. the following provision as to the County of Newberry: "That the limitations imposed in Section five (5), of Article ten (10), of the Constitution of South Carolina, shall not apply to the bonded indebtedness incurred by the County of Newberry when the proceeds of any bonds issued by the County of Newberry are applied exclusively for funding purposes of said county."

The resolution in this form was adopted by the House with the formalities provided by the Constitution and was then sent to the Senate, where it was amended by inserting in lieu of the quoted provision the following: "All notes and bonds heretofore issued by Newberry County and now outstanding and unpaid are hereby validated; and the General Assembly may authorize the said County to issue its bonds for the purpose of paying, funding or refunding the said outstanding notes or bonds, notwithstanding any limitation or restriction contained in this Constitution."

The resolution as thus amended was passed by the Senate with proper formalities and returned to the House, where the Senate amendment was agreed to, but without entry on the House journal of such amendment *in extenso,* or of a

yea and nay vote, or of an agreement to the Senate amendment by two-thirds of the members of the House.

Plaintiff contends that the omission of these formalities constituted a fatal defect in the adoption of the "submitting resolution." The defendants answer: (1) That it has been customary and, as a matter of legislative practice, seems to have been generally regarded as complying with the requirements for constitutional amendments, for the journal of either House or Senate to show concurrence in any amendment coming from the other branch of the General Assembly without showing the record vote thereon, and that such practice should be regarded as a compliance with constitutional requirements under the rule that "the legislative construction placed upon doubtful constitutional provisions is entitled to great weight and consideration, and raises a strong presumption that it is correct, and will generally be adopted by the Courts" (*Thompson v. Livingston,* 116 S. C., 412, 107 S. E., 581, 583); and (2) that the Senate amendment constitutes a change in form of expression rather than in the real substance of the legislative intent as expressed in the House resolution, and that, therefore, the compliance of the House with the constitutional requirements while the original resolution was under consideration was sufficient.

The people are the repository of all political power, and they have promulgated the Constitution as the fundamental law of the land. Realizing that changes in this instrument might become necessary or advisable from time to time, and recognizing the impracticability of calling a constitutional convention to pass upon every such proposed change, they prescribed, through their constitutional convention, certain conditions under which such changes might be made through action of the Legislature and a vote of the people themselves. These conditions include certain formalities to be complied with by the two Houses of the General Assembly before a proposed amendment is submitted to the people for a vote. The people have a right to assume, when an amendment is

submitted to them at a general election, that all the preliminary formalities—which were intended to insure a careful consideration of the amendments by the General Assembly before their submission—have been complied with, and that, therefore, the protection which these formalities afford has been given. We think it necessary that such formalities shall be substantially complied with, as otherwise the provisions of the Constitution requiring them —which are clear and explicit—would be of no effect. In *Heinitsh v. Floyd,* 130 S. C., 434, 126 S. E., 336, 337, this Court said: "Two things are essential to the amending of the Constitution by the legislative method, the proposed amendment must be properly submitted, and it must be adopted by the vote of the people in the free and fair exercise of their right of suffrage."

We do not see how an amendment could be "properly submitted" without compliance with the very formalities prescribed by the Constitution for that purpose. While it has been held that an amendment to a "submitting resolution" which would not affect the main purpose thereof may be adopted without a yea and nay vote (*Stevenson v. Carrison,* 122 S. C., 212, 115 S. E., 251), it would seem to be equally clear that if such an amendment goes to the substance of the resolution, the journal would have to show that the prescribed formalities have been complied with. In the present case a cursory examination of the proposed constitutional amendment contained in the resolution as it passed the House and that substituted therefor in the Senate show that the changes made by the Senate were material. The House provision is a mere extension of the debt limitation of Newberry County, when the proceeds of bonds are applied exclusively for funding purposes of that county and might reasonably be thought applicable only to indebtedness regularly incurred, while the Senate provision validates all notes and bonds of the county theretofore issued and un-

paid, which indebtedness was admittedly invalid at its inception—a difference not in form but in substance.

We think, therefore, that the failure of the House to observe the formalities prescribed by Section 1, of Article 16, of the Constitution in adopting the Senate amendment to the submitting resolution constitutes a fatal defect, and that the amendment was not properly submitted to the people.

The judgment of this Court should be: That the said proposed amendment to Section 5, of Article 10, of the Constitution, relating to Newberry County, be and is hereby declared inoperative, null, and void; that the Act of the General Assembly (Act No. 491, Acts of 1931, p. 918) authorizing the issuance of refunding bonds of Newberry County be and is hereby declared unconstitutional; and that the respondents herein be and are hereby permanently enjoined from issuing bonds of the said County of Newberry pursuant to said Act.

MR. JUSTICE CARTER, and MESSRS. CIRCUIT JUDGES RICE and TOWNSEND, concur.