18165

Carle GEBHARDT and W. H. Lawrence, Appellants, v. Richard A. McGINTY, C. J. Jones, and James L. Neidlinger, constituting the Forest Beach Public Service District Commission in Beaufort County, and Daniel R. McLeod, as Attorney General for South Carolina, Respondents.

(134 S. E. (2d) 749)

*W. Brantley Harvey, Jr., Esq.,* of Beaufort, *for Appellants,*

*Messrs. Marvin H. Dukes,* of Beaufort, and *Sinkler, Gibbs & Simons,* of Charleston, *for Respondents,*

February 10, 1964.

BUSSEY, Justice.

In this declaratory judgment action, appellants seek an adjudication of whether or not the Forest Beach Public Service District Commission in Beaufort County may issue bonds, pursuant to a 1962 enactment of the General Assembly, 52 St. at Large, p. 857, in excess of the 8% constitutional limitation provided for by Section 5, Article X of the Constitution. Whether or not the Commission may do so depends upon the validity and effectiveness of Act No. 111 of the Acts of 1961, 52 St. at Large, p. 116, which purports to ratify certain constitutional amendments proposed by Act No. 952 of the Acts of 1960, 51 St. at Large, p. 2221, and favorably voted upon by the electorate in the general election for 1960.

For a better understanding of the controversy, it is conceded by counsel for the parties that, there were doubts as to the validity, effectiveness and meaning of certain amendments, proposed in the year 1922, to Section 5, Article X of the Constitution, as well as Section 7, Article VIII, 32 St. at Large, pp. 1329, 1330, which doubts gave rise to the amendatory process commenced in the year 1960. We are not here called upon to pass upon the validity or effect of the 1922 amendments and express no opinion as to whether the doubts thereabout were justified.

The 1922 amendments were four in number and fairly lengthy. Two of them purported to amend the Constitution by relieving the City of Beaufort, under certain terms and conditions, from the bonded debt limitations imposed by Section 7, Article VIII of the Constitution, and by Section 5, Article X of the Constitution. One of them sought to amend the Constitution so as to relieve the "County of

Beaufort, or of townships, school districts, or other political subdivisions of said county" from the limitations imposed by Section 5, Article X, and the other sought to amend the Constitution so as to relieve "Beaufort" from said limitations.

Act No. 952 of the Acts of 1960 proposed five amendments to the Constitution. The first four of these proposed to repeal the 1922 amendments, each of the said 1922 amendments being set fort *in haec verba* in said Act.

The fifth proposed amendment, in 1960, would have added to Section 5, Aritcle X of the Constitution the following proviso:

"Provided, That the limitation imposed by this section, or by any other constitutional provision, limiting the amount of bonded indebtedness which may be incurred by a political subdivision of this State shall not apply to the County of Beaufort or to any political subdivision within such county."

It is by virtue of the last quoted proposed amendment and an enabling act of 1962 that the Commission claims it is authorized to issue bonds in excess of the 8% limitation. Act No. 111 of the Acts of 1961, which purported to ratify the five 1960 amendments, reads as follows:

"An Act To Ratify Amendments To Section 7, Article VIII And Section 5, Article X, Of The Constitution Of South Carolina, 1895, Which Delete Certain Provisos Which Exempt The County Of Beaufort And Other Political Subdivisions Within The County From The Amount Of Bonded Indebtedness Which May Be Incurred By a Political Subdivision Of This State.

"Be it enacted by the General Assembly of the State of South Carolina:

"SECTION 1. Amendments to Section 7, Article VIII and Section 5, Article X, State Constitution, ratified—bonded indebtedness of Beaufort County and its subdivisions.—The amendments to Section 7, Article VIII and

Section 5, Article X, of the Constitution of South Carolina, 1895, proposed under the terms of a Joint Resolution entitled 'A Joint Resolution Proposing Amendments To Section 7, Article VIII And Section 5, Article X, Of The Constitution Limiting The Amount Of Bonded Indebtedness Which May Be Incurred By Political Subdivisions Of This State, So As To Eliminate The Provisos To Such Sections Exempting The County of Beaufort And Other Political Subdivisions Within The County From Such Limitations, And Proposing An Amendment To Section 5, Article X, Of the Constitution To Exempt Beaufort County And Any Political Subdivision Within Such County From The Limitations Of That Section Or Any Other Constitutional Provision Limiting The Amount Of Bonded Indebtedness Which May Be Incurred By A Political Subdivision Of This State.' and appearing as a Joint Resolution and No. 952 of the Acts and Joint Resolutions of 1960, having been submitted to the qualified electors in the manner prescribed by Section 1 of Article XVI of the Constitution of South Carolina, 1895, and a favorable vote having been received thereon, the amendments are ratified."

The issue here is whether the said Act sufficiently complies with Section 1 of Article XVI of the Constitution, more particularly the last proviso thereof, concerning ratification, which reads as follows:

"Provided, That such amendment or amendments shall have been read three times, on three several days, in each House."

The appellants contend that the above quoted constitutional provision required that the amendments sought to be ratified should have been set forth *in haec verba* in the ratification act and that the failure to do so rendered the attempted ratification invalid. The lower court ruled against this contention of the appellants and held that the 1960 amendments were properly ratified.

It is conceded by counsel for both parties that, ever since the adoption of the Constitution of 1868 the legislature when seeking to ratify an amendment to the Constitution, with the exception of the Act here under attack, had undertaken to set forth the amendment or amendments in the ratifying act in the exact language of the proposing resolution. It would appear therefrom that the general assembly has consistently, with the exception of the Act under attack, construed the quoted proviso of Section 1 of Article XVI as requiring it to set forth any amendment or amendments in a ratification act. While the construction placed upon this constitutional provision by the legislature is not necessarily controlling, there is a strong presumption that it is correct and should be adopted by the court. *Weeks v. Ruff,* 164 S. C. 398, 162 S. E. 450; *Thompson v. Livingston,* 116 S. C. 412, 107 S. E. 581.

However, independently of legislative construction, we think the quoted constitutional language plainly required, as contended by appellants, that the actual amendments (which, incidentally, are five in number and rather involved) should have been read instead of only an act which referred to said amendments as those proposed by Act No. 952 of the Acts of 1960.

It should be borne in mind that the legislature which ratifies a constitutional amendment is not the legislature which proposed it, but a succeeding one. The framers of the Constitution, in providing for the ratification of amendments, specified that "such amendment or amendments shall [be] read". They apparently deemed it essential that the members of the ratifying general assembly should be fully acquainted with and have before them precisely what had been proposed by the preceding general assembly and voted favorably upon by the electorate.

The respondents contend that the so-called "enrolled act rule" is applicable to the controversy here and apparently the lower court's conclusion was, at least, influenced by such rule. It is true that the said rule has been applied to

certain aspects of legislation proposing and ratifying constitutional amendments. *Brailsford v. Walker,* 205 S. C. 228, 31 S. E. (2d) 385; *Lucas v. Barringer,* 120 S. C. 68, 112 S. E. 746; *Stevenson v. Carrison,* 122 S. C. 212, 115 S. E. 251; *Fleming v. Royall,* 145 S. C. 438, 143 S. E. 162. We think, however, that said rule has no application here. The so-called rule is concisely stated by this court in *State ex rel. Hoover v. Town Council of Chester,* 39 S. C. 307, 17 S. E. 752, and subsequently quoted many times, as follows:

" * * * when an act has been duly signed by the presiding officers of the general assembly, in open session in the senate and house, approved by the governor of the state, and duly deposited in the office of the secretary of the state, it is sufficient evidence, nothing to the contrary appearing upon its face, that it passed the general assembly, and that it is not competent, either by the journals of the two houses, or either of them, or by any other evidence, to impeach such an act."

Here, there is no question that the act, which sought to ratify the several constitutional amendments, passed the General Assembly. The act, however, shows upon its face that it did not comply with Section 1 of Article XVI of the Constitution and, hence, the enrolled act rule is clearly not applicable.

Among other things, the respondents urge that since the General Assembly can validly enact a statute, by reference, without setting forth such statute in full, the same rule should apply with respect to the ratification of a constitutional amendment. Respondents cite as to the enactment of a statute by reference *Santee Mills v. Query,* 122 S. C. 158, 115 S. E. 202. In that case the legislature enacted, by reference, certain federal law, rules and regulations, which legislation was challenged as being in violation of Section 18, Article III of the Constitution. The Court, while upholding the validity of the legislation, said, *inter alia,*

"While the dangers of such a method of legislating are not open to serious question, we are clearly of the opinion that the constitutional inhibition here invoked does not apply. The 'reading' contemplated by section 18, art. 3, of the Constitution, is the reading of the bill as drafted."

That the dangers of amending the Constitution by reference are much greater than those involved with ordinary legislation should be readily apparent, since ordinary legislation may be quickly amended or repealed by the same or a succeeding general assembly, while a constitutional amendment, of course, cannot and should not be so readily or quickly changed. Moreover, Section 18, Article III does not specify exactly the content of what shall be read, while Section 1 of Article XVI does specify what shall be read, which is "such amendment or amendments."

From the foregoing, it is clear that the Commission here has no power, by virtue of the 1960 amendment, to issue bonds in excess of the limitation provided by Section 5, Article X of the Constitution, since the aforesaid Act of 1961 was clearly ineffective to ratify the constitutional amendment properly submitted to the electorate and favorably voted upon.

Reversed.

TAYLOR, C. J., and MOSS, LEWIS and BRAILSFORD, JJ., concur.